IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| JOHN PAUL SZYMKOWICZ | ) | |
| 1543 44th Street, N.W. | ) | |
| Washington, DC 20007-2004 | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MICHAEL STUART FRISCH | ) | |
| 5925 Fall Moon Ride | ) | Case Number: 19-3329 |
| Clarksville, Maryland 21029-1675 | ) | |
| | ) | |
| and | ) | |
| | ) | |
| LAW PROFESSOR BLOGS, LLC | ) | |
| 24569 Via de Casa | ) | |
| Malibu, California 90265-3205 | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

Plaintiff John Paul Szymkowicz, for his complaint against Defendant Michael Stuart

Frisch and Defendant Law Professor Blogs, LLC, alleges as follows:

## Introduction

1.      This is a defamation action brought by John P. ("J.P.") Szymkowicz, a member of the

Bar of the District of Columbia, against Michael S. Frisch, a self-described "legal ethics" expert,

law professor and writer, and his publisher, Law Professor Blogs, LLC.  For years, Defendants

have engaged in false, defamatory, public, and vile personal attacks against J.P. Szymkowicz,

culminating in their most recent accusations of legal misconduct, "elder care abuse," and

"horrific elder abuse."  These assertions are libelous *per se* and were made with actual malice.

Defendants were specifically aware that J.P. Szymkowicz had been cleared of any and all ethical

violations by: 1) a Hearing Committee of the District of Columbia Board on Professional

Responsibility; 2) the Board on Professional Responsibility itself; and 3) the District of

Columbia Court of Appeals.  Defendants were also specifically aware that the Hearing

Committee in J.P. Szymkowicz's case found that Disciplinary Counsel, who was a colleague and

personal friend of Professor Frisch, evidenced "a serious misunderstanding of District of

Columbia law."  Nevertheless, despite knowing that the disciplinary proceedings had been

brought by a misguided Disciplinary Counsel, and despite knowing that J.P. Szymkowicz had

been exonerated by every tribunal to have considered the matter, Defendants continued to accuse

him of misconduct and elder abuse—recklessly disregarding the repeated findings that these

allegations were false.   Defendants have also refused to retract their defamatory statements, and

these statements continue to be published on the internet, resulting in damage to J.P.

Szymkowicz, his law practice, and to his professional and personal reputation.[1]

### Parties

2.      Plaintiff John Paul ("J.P.") Szymkowicz is a citizen of the District of Columbia.  He is a

member in good standing of the Bars of the District of Columbia, the State of Maryland, the

State of New York, and the Commonwealth of Virginia.

3.      Defendant Michael S. Frisch is a citizen of the State of Maryland and resides in Howard

County, Maryland.  He claims to be an "Ethics Counsel," working as an adjunct professor at

Georgetown University Law Center.

4.      Professor Frisch is also a contributor to the "Legal Profession Blog," and routinely

reports on legal disciplinary matters that he considers newsworthy.  His articles, including the

articles at issue in this case, are widely read and circulated in the District of Columbia.

---

[1]      A copy of the most recent defamatory article by Defendants, entitled "District of
Columbia Court Absolves Attorneys of Horrific Elder Abuse Conflict," is attached as Exhibit 1.

5.      Defendant Law Professor Blogs, LLC is a limited liability company established under the

laws of the State of Ohio, whose "Entity Number" with the Ohio Secretary of State's Office is

1496156.  Its principal place of business is located at 24569 Via de Casa, Malibu, California

90265-3205.

6.      Defendant Law Professor Blogs LLC is the publisher of the "Legal Profession Blog,"

which is widely read and circulated in the District of Columbia.

## Jurisdiction and Venue

7.      This Court has jurisdiction over this civil action pursuant to 28 U.S.C. § 1332 since the

matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs,

and J.P. Szymkowicz, on the one hand, and Defendants Frisch and Law Professor Blogs, LLC,

on the other hand, are citizens of different states.

8.      Venue is proper in this Court pursuant to 28 U.S.C. §1391 (b) (2) since a substantial part

of the events giving rise to the claim occurred in the District of Columbia.  Defendants are

subject to the personal jurisdiction of this Court given that the defamations were published in the

District of Columbia and concerned matters relating to the District of Columbia, and because

Professor Frisch regularly conducts business in the District of Columbia.

## Background of the Bar Complaint

9.      This action involves a number of articles written by Professor Frisch, and published by

Law Professor Blogs, LLC in the "Legal Profession Blog," concerning a bar complaint against

J.P. Szymkowicz and his father, John Thomas Szymkowicz.  This complaint was prosecuted

before the District of Columbia Board on Professional Responsibility and the District of

Columbia Court of Appeals by Julia Porter, who is Deputy Disciplinary Counsel in the District

of Columbia's Office of Disciplinary Counsel.

10.     The Szymkowiczes are attorneys who practice law in a two-person law firm known as Szymkowicz & Szymkowicz, LLP.  They have practiced law together since the mid-1990s.

11.     The bar complaint arose from litigation over a revocable trust involving four members of the Ackerman family: the parents, Stephen Ackerman, Sr. and Genevieve Ackerman, and their two children, Stephen Ackerman, Jr. and Mary Frances Abbott.

12.     In 2002, Mrs. Abbott "took the lead" in establishing a revocable trust for her parents. She signed the trust documents on behalf of both parents as their attorney-in-fact.

13.     Shortly thereafter, both the son, Stephen Ackerman, Jr., and the mother, Genevieve Ackerman, expressed unhappiness with the trust.  They retained the Szymkowiczes in an effort to reform the trust according to Mrs. Ackerman's intent and to return the assets to her.  Two lawsuits were filed in the Superior Court of the District of Columbia against the trustee, Mr. Abbott, with the first lawsuit filed by the son, Stephen Ackerman, Jr., and the second lawsuit filed by the mother, Genevieve Ackerman.

14.     After the trustee's counsel notified John Thomas Szymkowicz that he intended to call him as a witness during the trial, the Szymkowiczes promptly withdrew as counsel and successor counsel were retained to represent Mrs. Ackerman in that action.  The Szymkowiczes continued to represent Stephen Ackerman, Jr. in a separate proceeding in the Superior Court brought by the trustee to clear and transfer title on a North Carolina Avenue home.

15.     The principal counsel for the Ackermans in this litigation was John Thomas Szymkowicz, the senior member of the Szymkowicz law firm.  His son, J.P. Szymkowicz, was a relatively young attorney at that time and played a limited role in the case.  As subsequently determined by the Board of Professional Responsibility, his role was "entirely secondary to his

father's."  As the Board also noted, he never even spoke with Mrs. Ackerman, except to greet her in court on one occasion.

16.     Ultimately, Mrs. Ackerman and Stephen Ackerman, Jr. did not prevail in either of the two actions.  The trust was not reformed and the house on North Carolina Avenue was transferred to the trust.  Notably, in neither proceeding was there ever a suggestion—by court or counsel—that the Szymkowiczes had engaged in any improper or unethical conduct.

17.     Nevertheless, on May 24, 2005, Mrs. Abbott filed a bar complaint against John Thomas Szymkowicz with the District of Columbia Office of Bar Counsel (now called the District of Columbia Office of Disciplinary Counsel) alleging a conflict of interest.  Around two years later, Mrs. Abbott filed a similar complaint against J.P. Szymkowicz.  Disciplinary Counsel Julia Porter then chose to litigate the case based upon Mrs. Abbott's allegations, asserting "conflict of interest" and "dishonesty" charges.  Years of proceedings ensued.

**Rejection of the Bar Complaint**

18.     On September 28, 2012, after 12 days of hearings that took place in 2009 and 2010, a Hearing Committee of the Board on Professional Responsibility issued its decision recommending dismissal of all charges against the Szymkowiczes.  In its findings, the Hearing Committee noted that the dispute among the Ackerman family members was a "tragic drama," resulting in Mrs. Abbott's "palpable anger and hostility" toward the Szymkowiczes.  But, as the Hearing Committee further observed, this anger and hostility was "misplaced," insofar as it was directed against the Szymkowiczes.  Further, although the Hearing Committee was tolerant of Mrs. Abbott's "right to express her opinions," it was sharply critical of Disciplinary Counsel for prosecuting the action, particularly in view of her "serious misunderstanding of District of Columbia law."  Disciplinary Counsel simply accepted Mrs. Abbott's allegations at face value

and continued to litigate this matter—even though her allegations against the Szymkowiczes

were "substantially undermined by Mrs. Abbott's bias and hostility."

19.     In particular, the Hearing Committee found as follows:

> ¶306.   The Hearing Committee has listened to arguments and testimony for twelve
> hearing days, carefully reviewed over 3,800 pages of transcript (including the two pre-
> hearing conferences) and several more thousand pages comprising the 228 exhibits
> admitted in evidence, and considered the arguments set forth in the approximately 300
> pages of briefs submitted by the parties.  This careful review enables us to say, with
> confidence, that **there is no credible evidence, much less clear and convincing**
> **evidence, supporting any of Bar Counsel's charges**.  [emphasis added].
> . . .

> ¶307.   It is easy to understand why Mrs. Ackerman yearned for peace in her family.
> Throughout the years described in this record, there was no peace in the Ackerman
> family. It is also easy to understand Mrs. Abbott's anger at the situation with which all
> participants in this tragic drama were faced. The palpable anger and resulting hostility of
> Mrs. Abbott towards the Respondents is misplaced, however.

> ¶308.   We do not contest her right to express her opinions on any topic of her choosing,
> including the behavior of Respondents. However, that anger should not have affected Bar
> Counsel's investigation in this matter. It is nevertheless clear that Mrs. Abbott's "case"
> against the Respondents became Bar Counsel's "case" against Respondents. Bar Counsel
> asked Mrs. Abbott to attest to the truthfulness of her complaining letters.  But Bar
> Counsel's charges were substantially undermined by Mrs. Abbott's hostility and bias
> against Respondents, as clearly demonstrated in Mrs. Abbott's cross-examination.
> Further, Bar Counsel's serious misunderstanding of District of Columbia law with respect
> to mental capacity and consequently her failure to show that Mrs. Ackerman lacked
> capacity to interact with Respondents requires that the charges be dismissed against [John
> Thomas Szymkowicz and J.P. Szymkowicz].

20.     On July 25, 2014, the District of Columbia Board on Professional Responsibility accepted

the Hearing Committee's recommendations and dismissed all charges against the Szymkowiczes,

and called out Disciplinary Counsel's "unfortunate" and "*ad hominem*" attack on the Hearing

Committee:

> [d]espite the *quantity* of evidence urged by Bar Counsel, when we account for the
> Hearing Committee's *qualitative* credibility determinations, we agree that Bar Counsel
> has not clearly and convincingly proved the charges against Respondents.  [italics in
> original]. . . . [and] [a]lthough Bar Counsel decries as 'almost philosophical' some of the

legal issues discussed by the Hearing Committee, there is no meaningful challenge to the germane legal reasoning contained in the Committee's report.

Denigrating the Hearing Committee's rejection of its evidence, Bar Counsel aggressively criticizes its 'failure to consider much, if not most, of the evidence' or 'even to acknowledge it,' and characterizes this purported failing as a 'dereliction of [its] responsibility.' (Bar Counsel's Brief before the Board at 48-49). The *ad hominem* attack on the Hearing Committee's work product is unfortunate. The Hearing Committee did consider countervailing evidence (*see*, *e.g.* Hearing Committee's Findings of Fact at 79-93). The fact that it did not swell its report beyond 219 pages, further to detail evidence it found unpersuasive, does not mean the Committee ignored it."

21.     The July 25, 2014 opinion of the Board on Professional Responsibility also found that

J.P. Szymkowicz played a very limited role in the representation and bore no responsibility for

any of the allegedly unethical conduct alleged against his father:

> [W]e reject Bar Counsel's claim that J.P. Szymkowicz violated Rule 1.7 (b) (2) for an additional reason. Although he appeared on behalf of Mrs. Ackerman in the litigation, his role was entirely secondary to his father's. He never spoke to Mrs. Ackerman. He had no reason to discuss any conflict issues with her because his father had 'satisfied any inquiry he had about that. His father had a demonstrated history of being sensitive to, and vetting, conflicts in the past. J.P. Szymkowicz understood that his father would 'not do anything on behalf of his clients unless they understand what's going on, and the ramifications of what they are going to do. If there is a potential conflict, any potential conflict, . . . he's very, very thorough and takes sometimes hours discussing these kind of issues with clients, and that happens in every case.' J.P. Szymkowicz was entitled to rely on [John Thomas Szymkowicz's] determination of Mrs. Ackerman's capacity. He neither knew of, nor ratified, any improper conduct of his father. As a consequence, he did not have disciplinary liability for any failure of his father in that regard. [*citing* D.C. Bar Rule of Professional Conduct 5.1, Comment 6]. *See* Board Opinion 16 and 27.

22.     In a 27-page *per curiam* opinion issued on September 17, 2015, the District of Columbia

Court of Appeals dismissed all charges regarding dishonesty against the Szymkowiczes, but

remanded the case to the Board on Professional Responsibility for "further consideration of the

conflict-of-interest charges" because "the Szymkowiczes could not properly represent both Mrs.

Ackerman and Dr. Ackerman without obtaining informed consent to the joint representation.

Because it concluded that informed consent was not required, the Board did not decide whether

informed consent was obtained." *See* Court of Appeals Opinion 21-22, 27.

23.     The Court of Appeals' September 17, 2015 opinion further found that:

> The Board ruled in the alternative that Mr. J.P. Szymkowicz did not violate the conflict-of-interest rule because he reasonably relied on Mr. J.T. Szymkowicz's assurances that any conflict issues had adequately been addressed.  Because it is possible that the Board's assessment of that issue could be affected by the Board's determinations on remand, we also remand as to the conflict-of-interest charge against Mr. J.P. Szymkowicz.  *See* Court of Appeals Opinion 22 n.2.

24.     On May 19, 2017, the Board on Professional Responsibility issued a 36-page report and recommendation on remand from the Court of Appeals that stated, after a lengthy discussion of the law on capacity and burdens of proof,

> Disciplinary Counsel failed to prove by clear and convincing evidence that the Szymkowiczes failed to obtain informed consent pursuant to Rule 1.7 (c) after [John Thomas Szymkowicz] offered evidence of informed consent . . . [and] [b]ased on this conclusion, we also see no reason to revisit our previous finding that [J.P. Szymkowicz] reasonably relied on his father's assurances that he had obtained Mrs. Ackerman's informed consent under Rule 5.2 (subordinate lawyers). . . . [and, thus, the Board] recommends that the case against the Szymkowiczes be dismissed.  *See* Report 23, 25, 35.

25.     On November 8, 2018, the District of Columbia Court of Appeals dismissed all remaining charges against the Szymkowiczes, and held, in a 16-page opinion, that the record supports the Board on Professional Responsibility's conclusion that Disciplinary Counsel failed to carry the burden of proving by clear and convincing evidence that Mrs. Ackerman did not give informed consent to John Thomas Szymkowicz's and J.P. Szymkowicz's representation, and, with regard to J.P. Szymkowicz, the Court stated that:

> Although John P. Szymkowicz did not personally discuss conflicts of interest with Ms. Ackerman, the Board concluded that John P. Szymkowicz reasonably relied upon assurances from his father on the issue.  We do not understand Disciplinary Counsel to argue at this juncture that John P. Szymkowicz violated Rule 1.7 even if his father did not.  *See* Opinion 6-7.

26.     Thus, the case that began with a bar complaint filed against John Thomas Szymkowicz

on May 24, 2005, continued with Disciplinary Counsel's filing of a Specification of Charges

dated March 30, 2009, and ended on November 8, 2018—a total of 13 and a half years.

**Defendants' Defamatory Statements**

27.     Deputy Disciplinary Counsel Julia Porter and Professor Frisch were colleagues and close

friends.  They worked together as Disciplinary Counsel and co-taught ethics courses at

Georgetown University Law Center.  As Professor Frisch wrote in an unrelated article, he was

"biased in her favor."  As a result of this bias, after the Hearing Committee found against

Disciplinary Counsel Porter, criticizing her lack of judgment in accepting Mrs. Abbott's "case"

as her "case" and further criticizing her "serious misunderstanding" of the law, Professor Frisch

took it upon himself to attempt to vindicate his friend and colleague in the press.  He did so by

disparaging the District of Columbia's legal disciplinary process, and by recklessly and

maliciously defaming the Szymkowiczes—all without regard to the findings of the Hearing

Committee, the Board on Professional Responsibility, and the Court of Appeals.

28.     The first article that Professor Frisch wrote about this matter, was entitled "The Worst

Hearing Committee Report in D.C. History," published on the "Legal Profession Blog" on

October 22, 2012.  This article acknowledged that the Szymkowiczes had been "exonerated," but

took sharp issue that the Hearing Committee "viciously attacks the complainant ([Mrs.

Ackerman's] loving daughter) as biased and incredible."  Professor Frisch went on to accuse the

Chair of the Hearing Committee of being biased—on the sole ground that he was an elder care

lawyer.  Professor Frisch's conclusion: "In sum, the report reflects the most superficial reasoning

and failure to comprehend fundamental principles of legal ethics that I've seen in nearly 30 years

of reading these reports."

29.     Professor Frisch published on this matter again after the Board on Professional Responsibility dismissed all charges against the Szymkowiczes.  His next article, written July 28, 2014, was entitled "Worst Report Affirmed."  He continued to criticize the Hearing Committee, accusing it of ignoring the evidence "in aid of its steadfast desire to find no misconduct."

30.     After the Court of Appeals remanded the Szymkowiczes' case to the Board on Professional Responsibility on September 17, 2015, Professor Frisch published a third article, this time describing the Hearing Committee as "obviously rogue."

31.     A fourth article was published on May 22, 2017, entitled "The Most Blatant Regulatory Failure in D.C. Bar History Nears A Conclusion."  This article attacked both the District of Columbia disciplinary process and the Szymkowiczes.  This article accused the Hearing Committee of a "gross and inexcusable failure to deal with the evidence" and stated that the "greatest injustice" had been perpetrated.  The article then took aim at the Szymkowiczes, accusing them of instituting "frivolous" litigation, helping their client "loot his mother's estate," and "stage managing" the representation of Mrs. Ackerman after they withdrew from her representation.

32.     The May 22, 2017 article also indicated that "Disciplinary Counsel can appeal this atrocity to the [District of Columbia Court of Appeals]."

33.     This May 22, 2017 article was also cited on BarCounsel.com, in the subject area, "Bad Lawyer Experience Stories, Misc [sic] News," with the heading:

> "Simply state [sic] the Judicial System is BROKEN [emphasis in original].  For evidence to support such an assertion review the FACTS [emphasis in original] associated to this case.  For those of sufficiently strong stomach, the report in In re Szymkovicz [sic], Szymkovicz [sic], Silverman & King can be accessed through this link [the link found on the word "accessed"].  *See* http://www.barcomplaint.com/lawyer-stories/the-most-blatant-regulatory-failure-in-d-c-bar-history-nears-a-conclusion/.

34.     Within minutes after the District of Columbia Court of Appeals issued its decision on

November 8, 2018, Professor Frisch released his fifth article relating to this matter, which was

updated several times over the next few days.  This article is currently found at:

https://lawprofessors.typepad.com/legal_profession/2018/11/district-of-columbia-court-absolves-elder-abuse-conflict.html

35.     The November 8, 2018 article was entitled "District of Columbia Court Absolves

Attorneys of Horrific Elder Abuse Conflict.  The article again criticized the District of Columbia

disciplinary process and stated that this was "the most pro-attorney, anti-public protection

recommendation in the history of the D.C. discipline system."  The article then launched into an

attack on the Szymkowiczes, accusing them of legal "misconduct," "elder care abuse," and

"horrific elder abuse:"

> The District of Columbia Court of Appeals has in a *per curiam* decision affirmed
> [clicking on the word "affirmed" in the online version of this blog post takes the reader to
> a pdf version of the Court's opinion involving J.P. Szymkowicz referenced in the article]
> the most pro-attorney, anti-public protection recommendation in the history of the D.C.
> discipline system.  As a consequence, attorneys who clearly engaged in a gross conflict of
> interest get off scot-free for horrific elder abuse.
>
> I find this shocking, but at least it makes the agenda of this report crystal clear: protect
> the profession, trash the victim of misconduct (and discourage other victims from coming
> forward), make future Bar Counsel prosecutions virtually impossible and use the whole
> thing as a marketing tool.

36.     On or about August 30, 2019, J.P. Szymkowicz demanded a retraction of the November

8, 2018 article in a letter, and, on or about September 7, 2019, emailed a pdf of this letter to

Professor Frisch and Paul L. Caron, owner and/or manager of Law Professor Blogs, LLC.[2]

37.     Neither Professor Frisch nor anyone associated with Law Professor Blogs, LLC

responded to J.P. Szymkowicz's letter or retracted any of their statements.

---

[2]     A copy of this letter dated August 30, 2019 is attached to this complaint as Exhibit 2.

## COUNT I:  DEFAMATION

38.     The allegations in paragraphs 1-37 of this complaint are incorporated herein as if fully stated.

39.     Defendants' assertions that J.P. Szymkowicz engaged in legal misconduct, elder care abuse, and horrific elder abuse are false and defamatory *per se,* as these assertions tend to injure him in his career and profession by falsely accusing him of unethical behavior and fraud, in a manner injurious to his reputation and esteem.  The allegations are also defamatory *per se* because they falsely accuse J.P. Szymkowicz of a criminal offense.  Elder abuse is a crime in the District of Columbia (and elsewhere).  *See* the Criminal Abuse, Neglect and Financial Exploitation of Vulnerable Adults and the Elderly Act of 2000, District of Columbia Code Section 22-931, *et seq*.

40.     The allegations of misconduct, elder care abuse and horrific elder abuse are verifiable statements of fact and have already been verified as false by the Hearing Committee, the Board on Professional Responsibility, and the Court of Appeals.

41.     These allegations were made unfairly, negligently, and with actual malice.  Defendants either knew that the allegations were false or acted with reckless disregard of the truth.  Defendants continued to falsely accuse the Szymkowiczes of misconduct and elder abuse despite their knowledge that the disciplinary charges had been rejected by every tribunal to consider them.  They continued to falsely accuse the Szymkowiczes despite the fact that Disciplinary Counsel had been found to exhibit poor judgment and a serious lack of legal understanding in bringing the case in the first place.  And Defendants continued to falsely accuse J. P. Szymkowicz, despite their knowledge that he had played a very limited role in the matter and could not be faulted for any alleged failing of his father.  Professor Frisch's friendship with

Disciplinary Counsel and his desire to exonerate her in the wake of the Hearing Committee's criticisms of her caused him to act in an unfair, misguided, biased, negligent, malicious, and reckless manner with respect to J.P. Szymkowicz.

42.     In addition to constitutional malice demonstrated by Professor Frisch is the fact that he has acknowledged his own personal animus, ill-will, and spite toward J.P. Szymkowicz.  In his May 22, 2017 article, he indicates his desire that the Szymkowiczes be punished: "this outcome serves as a warning to victims—don't bother to bring your concerns to the D.C. Bar, as you will only get attacked for your trouble. . . . In a just world, what happened to Fran Abbott (the complaining daughter) would happen to them."

43.     The aforementioned statements were made of and concerning J.P. Szymkowicz, and were so understood by those who read them.

44.     Defendants knew or should have known that the aforementioned statements were injurious to J.P. Szymkowicz's career and reputation.

45.     By publishing the aforementioned statements, Defendants knew that they would be republished and read by the general public throughout the District of Columbia and the United States of America.  These statements were in fact, republished and read by members of the general public throughout the District of Columbia and the United States of America as a direct, natural, probable, and foreseeable consequence of their publication.

46.     The aforementioned statements give rise to presumed damages, as well as to economic and punitive damages to J.P. Szymkowicz.

47.     As a direct and proximate result of the aforementioned statement and its publication, J.P. Szymkowicz continues to suffer damages in an amount to be determined at trial, but not less than the jurisdictional minimum of this Court.

## COUNT II:  INVASION OF PRIVACY – FALSE LIGHT

48.     The allegations in each of the preceding paragraphs 1-47 of this complaint are incorporated herein as if fully stated.

49.     Defendants' publicized statements about J.P. Szymkowicz discussed above were understood to be of and concerning him, which placed him in a false light that would be highly offensive to a reasonable person.

50.     The manner by which Defendants sought to harm J.P. Szymkowicz, including the steps described above, was extreme and outrageous, and was so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.

51.     As a result of the actions of Defendants, including besmirching J.P. Szymkowicz's reputation and falsely accusing him of misconduct and abuse caused him damage, including, but not limited to severe emotional distress, loss of income and loss of business opportunity.

52.     As a result of the actions of Defendants, the character and reputation of J.P. Szymkowicz was harmed, his standing and reputation among the community were impaired, he suffered financially, and he suffered mental anguish and personal humiliation.

53.     The aforementioned actions by Defendants give rise to presumed damages, as well as to economic and punitive damages to J.P. Szymkowicz.

54.     As a direct and proximate result of the aforementioned statements and its publication, J.P. Szymkowicz continues to suffer damages in an amount to be determined at trial, but not less than the jurisdictional minimum of this Court.

## COUNT III:  INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

55.     The allegations in each of the preceding paragraphs 1-54 of this complaint are incorporated herein as if fully stated.

56.     Defendants' publicized statements about J.P. Szymkowicz discussed above were made intentionally with a desire to harm him.

57.     The manner by which Defendants sought to harm J.P. Szymkowicz, including the steps described herein, was extreme and outrageous, and was so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.

58.     As a result of the actions of Defendants, including, besmirching J.P. Szymkowicz's reputation and falsely accusing him of misconduct and abuse caused him severe emotional distress.

59.     As a result of the actions of Defendants, the character and reputation of J.P. Szymkowicz was harmed, his standing and reputation among the community were impaired, he suffered financially, and he suffered mental anguish and personal humiliation.

60.     In addition to constitutional malice demonstrated by Professor Frisch is the fact that he has acknowledged his own personal animus, ill-will, and spite toward J.P. Szymkowicz.  In his May 22, 2017 article, he indicates his desire that the Szymkowiczes be punished: "this outcome serves as a warning to victims—don't bother to bring your concerns to the D.C. Bar, as you will only get attacked for your trouble. . . .  In a just world, what happened to Fran Abbott (the complaining daughter) would happen to them."

61.     The aforementioned statements were made of and concerning J.P. Szymkowicz, and were so understood by those who read them.

62.     The aforementioned statements give rise to presumed damages, as well as to economic and punitive damages to J.P. Szymkowicz.

63.     As a direct and proximate result of the aforementioned statement and its publication, J.P. Szymkowicz continues to suffer damages in an amount to be determined at trial, but not less than the jurisdictional minimum of this Court.

WHEREFORE, Plaintiff John Paul Szymkowicz demands judgment, jointly and severally, against Defendant Michael Stuart Frisch and Defendant Law Professor Blogs, LLC for: (1) judgment on Counts I, II, and III; (2) presumed damages in an amount to be awarded at trial; (3) compensatory damages in an amount to be proven at trial; (4) punitive damages in an amount to be proven at trial; (5) all costs, interest, attorneys' fees and disbursement to the highest extent permitted by law; and (6) such other and further relief as this Court may deem proper.

Respectfully submitted,

John B. Williams (D.C. Bar No. 257667)
Fara N. Kitton (D.C. Bar No. 1007793)
WILLIAMS LOPATTO PLLC
1200 New Hampshire Avenue, N.W., Suite 750
Washington, DC 20036
(202) 296-1665
jbwilliams@williamslopatto.com
*Attorney for Plaintiff John Paul Szymkowicz*

## JURY DEMAND

Plaintiff John Paul Szymkowicz demands trial by jury as to all issues so triable.

John B. Williams (D.C. Bar No. 257667)
Fara N. Kitton (D.C. Bar No. 1007793)
WILLIAMS LOPATTO PLLC
1200 New Hampshire Avenue, N.W., Suite 750
Washington, DC 20036
(202) 296-1665
jbwilliams@williamslopatto.com
*Attorney for Plaintiff John Paul Szymkowicz*