## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JOHN PAUL SZYMKOWICZ<br><br>      Plaintiff,<br><br>v.<br><br>MICHAEL STUART FRISCH<br><br>     Defendant. | Civil Action No. 19-3329 (BAH)<br><br>Chief Judge Beryl A. Howell<br><br>**ORAL ARGUMENT REQUESTED** |

## REPLY MEMORANDUM IN SUPPORT OF DEFENDANT MICHAEL FRISCH'S MOTIONS TO DISMISS PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(b)(1) AND 12(b)(6) AND THE DISTRICT OF COLUMBIA ANTI-SLAPP ACT

Matthew J. Rizzolo (D.C. 991577)
Jonathan R. Ference-Burke (D.C. 1001179)
Ryan C. Brunner (D.C. 241467)
ROPES & GRAY LLP
2099 Pennsylvania Avenue, NW
Washington, DC 20006
Telephone:  (202) 508-4600
Facsimile:  (202) 508-4650
Matthew.Rizzolo@ropesgray.com
Jonathan.Ference-Burke@ropesgray.com
Ryan.Brunner@ropesgray.com

*Counsel for Defendant Michael Frisch*

# TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................................................. i

TABLE OF AUTHORITIES ..................................................................................................... iii

INTRODUCTION .................................................................................................................... 1

ARGUMENT ........................................................................................................................... 2

I.    THE PLAINTIFF CONCEDES THAT ALL CLAIMS BASED ON BLOG POSTS
PRIOR TO NOVEMBER 5, 2018 ARE TIME-BARRED ................................................. 2

II.   THE PLAINTIFF FAILED TO PLEAD ANY AMOUNT IN CONTROVERSY, LET
ALONE AN AMOUNT SUFFICIENT TO GIVE THIS COURT SUBJECT MATTER
JURISDICTION UNDER 28 U.S.C. § 1332(a) ................................................................ 3

III.  THE PLAINTIFF FAILS TO ADDRESS THE EFFECT OF *COMPETITIVE
ENTERPRISE INSTITUTE v. MANN* ON THE ANTI-SLAPP ACT ................................. 6

     A.    The Plaintiff's Argument that the Anti-SLAPP Act Does Not Apply Rests
Entirely on the Flawed Reasoning of Non-Binding District Court Decisions. ........ 6

     B.    The Plaintiff Attempts To Mislead the Court by Misrepresenting the Holdings of
Out-of-Circuit Cases. ........................................................................................ 8

     C.    The Plaintiff Concedes that Professor Frisch's Blog Post Was an Act in
Furtherance of the Right of Advocacy on Issues of Public Interest. .................... 10

     D.    The Claims in the Complaint Could Not Prevail as a Matter of Law. .................. 10

IV.  THE COMPLAINT FAILS TO STATE A CLAIM FOR DEFAMATION .................... 11

     A.    The Plaintiff Is a "Public Figure" Because He Played a Significant Role in the
Disciplinary Proceeding, Which Focused Primarily on His Past Conduct. .......... 11

         1.    The Disciplinary Proceeding Involving the Plaintiff Was a "Public
Controversy" Because the Proceeding Involved Cases in at Least Four
Forums and Had Substantial Ramifications for Nonparticipants. ............ 13

         2.    The Plaintiff Played a "Significant Role" in the Disciplinary Proceeding
and Underlying Conduct. ........................................................................ 15

         3.    Professor Frisch's Blog Posts Were "Germane" to the Plaintiff's
Involvement in the Disciplinary Proceeding and Underlying Conduct. .... 15

     B.    Professor Frisch's Statements, Viewed in Context, Were Not False or Capable of
Defamatory Meaning. ...................................................................................... 16

     C.    Professor Frisch's Statements Fall Under the "Fair Comment" and "Fair Report"
Privileges Because His Statements Consistently and Fairly Drew Upon the
Official Disciplinary Proceedings. ..................................................................... 20

     D.    The Plaintiff's Argument that the Statements Were Made with Actual Malice
Relies on a Mischaracterization of the Disciplinary Proceedings. ...................... 22

V.   THE COMPLAINT ALSO FAILS TO STATE A CLAIM FOR FALSE LIGHT OR
INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS ...................................... 23

A.    The False Light Claim Fails as a Matter of Law. .................................................. 24

B.    The Intentional Infliction of Emotional Distress Claim Fails as a Matter of Law. ........................................................................................................................... 24

CONCLUSION..................................................................................................................... 25

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Abbas v. Foreign Policy Grp., LLC*,
    783 F.3d 1328 (D.C. Cir. 2015) ............................................................6

*ABLV Bank v. Ctr. for Advanced Def. Studies Inc.*,
    No. 1:14-cv-1118, 2015 WL 12517012 (E.D. Va. Apr. 21, 2015) .........10

*Adelson v. Harris*,
    774 F.3d 803 (2d Cir. 2014)...................................................................9

*Akhmetshin v. Browder*,
    407 F. Supp. 3d 11 (D.D.C. 2019), *appeal filed*, No. 19-1729 (D.C. Cir. Oct.
    15, 2019) ...............................................................................................8

*Armstrong v. Thompson*,
    80 A.3d 177 (D.C. 2013) ......................................................................24

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)...........................................................................3, 5

*In re Askew*,
    No. 17-BG-0152 (D.C. Feb. 20, 2020) ................................................15

*Burke v. Air Serv. Int'l, Inc.*,
    775 F. Supp. 2d 13 (D.D.C. 2011), *aff'd*, 685 F.3d 1102 (D.C. Cir. 2012).............3

*Carbone v. Cable News Network, Inc.*,
    910 F.3d 1345 (11th Cir. 2018) .............................................................9

*\*Chan Chan v. Children's Nat'l Med. Ctr.*,
    No. 18-cv-2102 (CKK), 2019 WL 4471789 (D.D.C. Sept. 18, 2019)...............2, 10

*Cockrum v. Donald J. Trump for President, Inc.*,
    319 F. Supp. 3d 158 (D.D.C. 2018) .......................................................7

*\*Competitive Enter. Inst. v. Mann*,
    150 A.3d 1213 (D.C. 2016), *as amended* Dec. 13, 2018 ............... *passim*

*Democracy Partners v. Project Veritas Action Fund*,
    285 F. Supp. 3d 109 (D.D.C. 2018) .......................................................7

*Deripaska v. Associated Press*,
    No. 17-00913 (ESH), 2017 WL 8896059 (D.D.C. Oct. 17, 2017), *appeal
    dismissed*, No. 17-7164, 2017 WL 6553388 (D.C. Cir. Dec. 8, 2017).....................8

*Easaw v. Newport,
    253 F. Supp. 3d 22 (D.D.C. 2017) ..............................................................................7

El-Hadad v. Embassy of the U.A.E.,
    No. 96-cv-1943 (RWR), 2006 WL 826098 (D.D.C. Mar. 29, 2006), *rev'd in*
    *part on other grounds*, 496 F.3d 658 (D.C. Cir. 2007) ............................................4, 25

FCC v. Pacifica Found.,
    438 U.S. 726 (1978) ...............................................................................................24

Fisher v. Wash. Post Co.,
    212 A.2d 335 (D.C. 1965) .......................................................................................20

Freeman Holdings of Ariz., L.L.C. v. Does, 1-50,
    No. CV-11-01877-PHX-NVW, 2013 WL 210810 (D. Ariz. Jan. 18, 2013) .............................5

In re Gawker Media LLC,
    571 B.R. 612 (Bankr. S.D.N.Y. 2017) ..........................................................................9

Gertz v. Robert Welch, Inc.,
    418 U.S. 323 (1974) .............................................................................................4, 12

In re Green,
    143 A.3d 778 (D.C. 2016) .......................................................................................15

Godin v. Schencks,
    629 F.3d 79 (1st Cir. 2010) ......................................................................................9

*Greenbelt Coop. Publ'g Ass'n v. Bresler,
    398 U.S. 6 (1970) ...............................................................................................17, 19

*Griffith v. EduCap, Inc.,
    No. 16-cv-1541 (DLF), 2019 WL 4737064 (D.D.C. Sept. 27, 2019) ..................................3, 4

Gulf Coast Mar. Supply, Inc. v. United States,
    867 F.3d 123 (D.C. Cir. 2017) .................................................................................11

Henry v. Lake Charles Am. Press, LLC,
    566 F.3d 164 (5th Cir. 2009) ....................................................................................8

Herbert v. Lando,
    441 U.S. 153, 164 n.12 (1979) ...................................................................................8

Horsley v. Rivera,
    292 F.3d 695 (11th Cir. 2002) .................................................................................20

Hustler Magazine, Inc. v. Falwell,
    485 U.S. 46 (1988) ...............................................................................................25

*Intercon Sols., Inc. v. Basel Action Network*,
   791 F.3d 729 (7th Cir. 2015) ................................................................9

*Intercon Sols., Inc. v. Basel Action Network*,
   969 F. Supp. 2d 1026 (N.D. Ill. 2013), *aff'd on other grounds*, 791 F.3d 729
   (7th Cir. 2015)......................................................................................9

*Jankovic v. Int'l Crisis Grp.*,
   822 F.3d 576 (D.C. Cir. 2016), *cert. denied*, 137 S. Ct. 1434 (2017) ....................................16

*Kahl v. Bureau of Nat'l Affairs, Inc.*,
   856 F.3d 106 (D.C. Cir. 2017), *cert. denied*, 138 S. Ct. 366 (2017) ..........................11, 12, 15

*Klayman v. Segal*,
   783 A.2d 607 (D.C. 2001) ...................................................................24

*Klocke v. Watson*,
   936 F.3d 240 (5th Cir. 2019) ................................................................8

*Los Lobos Renewable Power, LLC v. Americulture, Inc.*,
   885 F.3d 659 (10th Cir. 2018), *cert. denied*, 139 S. Ct. 591 (Dec. 3, 2018) ...........................9

*Milkovich v. Lorain Journal Co.*,
   497 U.S. 1 (1990)........................................................................16, 17

*Moldea v. N.Y. Times Co.*,
   22 F.3d 310 (D.C. Cir. 1994) ..........................................................16, 17, 18, 24

*Mullane v. Breaking Media, Inc.*,
   No. 18-12618-PBS, 2020 WL 58455 (D. Mass. Jan. 6, 2020), *appeal filed*,
   No. 20-1062 (1st Cir. Jan. 16, 2020)...............................................18, 21

*OAO Alfa Bank v. Ctr. for Pub. Integrity*,
   387 F. Supp. 2d 20 (D.D.C. 2005) ...................................................20, 21

*Old Dominion Branch No. 496, Nat'l Ass'n of Letter Carriers, AFL-CIO v.
   Austin*,
   418 U.S. 264 (1974).......................................................................17, 19

*Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*,
   890 F.3d 828 (9th Cir. 2018) ................................................................8

*Platinum Press, Inc. v. Douros-Hawk*,
   No. 3:18-CV-00458-GCM, 2018 WL 6435331 (W.D.N.C. Dec. 7, 2018) ...........................9

*In re Robbins*,
   192 A.3d 558 (D.C. 2018) ...................................................................15

*Schnare v. Ziessow,*
    104 F. App'x 847 (4th Cir. 2004) .........................................................................20

*In re Schwartz,*
    221 A.3d 925 (D.C. 2019) ...................................................................................15

*In re Silverman,*
    Va. St. Bar No. 18-000-111671, 2018 WL 2926010 (Va. St. Disp. Bd. May
    24, 2018) ...............................................................................................................15

*Smith v. Clinton,*
    886 F.3d 122 (D.C. Cir. 2018), *cert. denied*, 139 S. Ct. 459 (2018) .....................25

*\*In re Szymkowicz,*
    124 A.3d 1078 (D.C. 2015) .............................................................................2, 22

*\*In re Szymkowicz,*
    195 A.3d 785 (D.C. 2018) ......................................................................... *passim*

*Texas v. United States,*
    798 F.3d 1108 (D.C. Cir. 2015), *cert. denied sub nom. Texas v. Davis*, 136 S.
    Ct. 981 (2016) ..................................................................................................2, 10

*Trudeau v. FTC,*
    456 F.3d 178 (D.C. Cir. 2006) ............................................................................18

*Unity Healthcare, Inc. v. Cty. of Hennepin,*
    308 F.R.D. 537 (D. Minn. 2015), *appeal dismissed*, No. 15-2489, 2016 WL
    11339506 (8th Cir. 2016).......................................................................................9

*Verizon Del., Inc. v. Covad Commc'ns Co.,*
    377 F.3d 1081 (9th Cir. 2004) ..............................................................................8

*Waldbaum v. Fairchild Publ'ns, Inc.,*
    627 F.2d 1287 (D.C. Cir. 1980), *cert. denied*, 449 U.S. 898 (1980) .....................13

*\*Weyrich v. New Republic, Inc.,*
    235 F.3d 617 (D.C. Cir. 2001) ............................................................................16

*Wolston v. Reader's Digest Ass'n, Inc.,*
    443 U.S. 157 (1979)........................................................................................12, 13

*Wood v. Am. Fed'n of Gov't Emps.,*
    316 F. Supp. 3d 475 (D.D.C. 2018) .....................................................................20

## Statutes & Constitutional Provisions

28 U.S.C. § 1292(b) ...................................................................................................10

28 U.S.C. § 1332(a) ......................................................................................................1, 3

D.C. Code § 12-301(4)........................................................................................................2

D.C. Code § 16-5501 ..........................................................................................................6

D.C. Code § 16-5502(a)....................................................................................................10

D.C. Code § 22-931 ..........................................................................................................19

U.S. Const. Amend. I ........................................................................................................24

**Other Authorities**

2P1 Nichols Cyclopedia Legal Forms § 27:16 (2019)....................................................15

31 Am. Jur. Trials § 633 (2020)......................................................................................15

Burkoff, Crim. Def. Ethics § 6.2 (2d Ed. 2019)..............................................................15

D.C. Rule of Professional Conduct 1.7............................................................................18

Federal Rule of Civil Procedure 12(b)(1) ..........................................................................2

Federal Rule of Civil Procedure 12(b)(6) ..........................................................2, 10, 11

Federal Rule of Civil Procedure 56 ....................................................................................7

Krauskopf *et al.*, 1 Elderlaw Advoc. Aging (2d Ed. 2019) ............................................15

Stein, Trial Handbook for D.C. Law. § 1:11 (2019)........................................................15

**Disciplinary Proceeding Decisions**

| Entity | Date | Citation (if Applicable) | Exhibit No. |
|---|---|---|---|
| Hearing Committee | September 28, 2012 | | Exhibit 1 |
| Board of Professional Responsibility | July 25, 2014 | | Exhibit 2 |
| D.C. Court of Appeals | September 17, 2015 | *In re Szymkowicz*, 124 A.3d 1078 (D.C. 2015) | Exhibit 3 |
| Board of Professional Responsibility on remand | May 19, 2017 | | Exhibit 4 |
| D.C. Court of Appeals | November 8, 2018 | *In re Szymkowicz*, 195 A.3d 785 (D.C. 2018) | Exhibit 5 |

## INTRODUCTION

The plaintiff's Opposition (Dkt. 17) confirms that this case does not belong in federal court.

First, the plaintiff concedes that the statute of limitations bars all of his claims except to the extent that they are based on the November 5, 2018 blog post, which becomes the only relevant post for determining whether the plaintiff has stated any claims or can possibly recover enough damages to meet the amount-in-controversy requirement of 28 U.S.C. § 1332(a). The plaintiff also concedes that his settlement with Professor Frisch's co-defendant—in which Professor Frisch was not involved—caused the November 8, 2018 blog post to be taken off the Internet. Because the post is no longer available, any damages must be limited to the fourteen months between November 8, 2018 and January 3, 2020. While those concessions would be enough on their own to show that the amount in controversy in this case falls far short of $75,000, any remaining doubt about the deficiencies in the plaintiff's invocation of federal jurisdiction is confirmed by his failure to identify in his Opposition even the most meager details as to why his alleged damages meet the threshold. The plaintiff's transparent attempt at forum-shopping should be rejected—this Court lacks subject-matter jurisdiction, and the Complaint should be dismissed on that basis.

Separately, the plaintiff reveals that he has no arguments in response to Professor Frisch's Anti-SLAPP Motion (the very motion he sought to avoid by filing in federal court). Instead, he fails to distinguish non-binding cases—which, as Professor Frisch already explained in his Anti-SLAPP Motion, were wrongly decided—and asks the Court to fall in line with those cases reflexively. Closer consideration of those cases, however, reveals that the plaintiff distorts their holdings and that there is, at the very least, a substantial and difficult question about whether the D.C. Anti-SLAPP Act applies in federal court after *Competitive Enterprise Institute v. Mann*, 150 A.3d 1213 (D.C. 2016), *as amended* Dec. 13, 2018.

1

Should the Court reach the merits of Professor Frisch's motion to dismiss for failure to state a claim, the plaintiff's claims—already significantly narrowed in scope by his concessions—cannot survive.  The plaintiff concedes that Professor Frisch's blog post was an act "in furtherance of the right of advocacy on issues of public interest," implicitly conceding that his disciplinary proceeding was a matter of public controversy (and toppling his implausible claim that he is not a "public figure").  Most crucially, the plaintiff ignores the fundamental requirement that allegedly defamatory statements be viewed in context rather than in a vacuum.  Context is critical in this case, and consideration of it proves the blog post was not capable of defamatory meaning.[1]

Accordingly, the Court should grant the motions to dismiss the Complaint with prejudice.

## ARGUMENT

### I.  THE PLAINTIFF CONCEDES THAT ALL CLAIMS BASED ON BLOG POSTS PRIOR TO NOVEMBER 5, 2018 ARE TIME-BARRED

The plaintiff does not address Professor Frisch's argument that all of the plaintiff's claims are subject to the one-year statute of limitations in District of Columbia Code § 12-301(4).  *See* Memorandum in Support of Motion to Dismiss Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) (Dkt. 13-1) ("MTD") 19-22.  He has thus "conceded this argument by not responding to it in his Opposition."  *Chan Chan v. Children's Nat'l Med. Ctr.*, No. 18-cv-2102 (CKK), 2019 WL 4471789, at *7 (D.D.C. Sept. 18, 2019) (plaintiff conceded claim was time-barred by not responding to defendant's statute-of-limitations argument); *see also, e.g.*, *Texas v. United States*, 798 F.3d 1108, 1110 (D.C. Cir. 2015), *cert. denied sub nom. Texas v. Davis*, 136 S.

---

[1] The plaintiff agrees that this Court should take judicial notice of all records of disciplinary proceedings involving the plaintiff.  Opp'n 3 n.1.  For ease of reference for the Court, the relevant disciplinary decisions are attached to this Reply as **Exhibit 1** (Hearing Committee Report, Sept. 28, 2012), **Exhibit 2** (Board of Professional Responsibility, July 25, 2014), **Exhibit 3** (*In re Szymkowicz*, 124 A.3d 1078 (D.C. 2015)), **Exhibit 4** (Board of Professional Responsibility on Remand, May 19, 2017), and **Exhibit 5** (*In re Szymkowicz*, 195 A.3d 785 (D.C. 2018)).

Ct. 981 (2016).   Only the November 8, 2018 post (Dkt. 1, Ex. 1) is within the statute of limitations period, so only that post can be the basis for any claim or damages.

## II.    THE PLAINTIFF FAILED TO PLEAD ANY AMOUNT IN CONTROVERSY, LET ALONE AN AMOUNT SUFFICIENT TO GIVE THIS COURT SUBJECT MATTER JURISDICTION UNDER 28 U.S.C. § 1332(a)

The plaintiff's Complaint does not include plausible allegations to support a conclusion that the amount in controversy exceeds $75,000 as required by 28 U.S.C. § 1332(a).  MTD 16-19. Yet even after being confronted with this clear deficiency, the plaintiff's Opposition makes no attempt to cite any evidence or make plausible factual allegations to support *any* damages, let alone the required amount in controversy.  Instead, the plaintiff relies on an imaginary legal rule—that allegations of defamation per se and requests for punitive damages automatically satisfy the jurisdictional threshold.  That is not the law, and the plaintiff's conclusory arguments do not give this Court subject matter jurisdiction.  The Court should be particularly skeptical of the plaintiff's invocation of this Court's jurisdiction in a transparent (though incorrect, *see infra* Part III) attempt to forum shop to avoid the strictures of the D.C. Anti-SLAPP Act.  *See Burke v. Air Serv. Int'l, Inc.*, 775 F. Supp. 2d 13, 19-20 (D.D.C. 2011), *aff'd*, 685 F.3d 1102 (D.C. Cir. 2012).

It is telling that, in his Opposition, the plaintiff still refuses to say what the amount in controversy actually is.  Instead, he makes only boilerplate references to "injury to reputation" and the like, without describing any concrete factual allegations or support.  *See, e.g.*, Opp'n 27.  These vague statements are "'naked assertion[s]' devoid of 'further factual enhancement'"—they are insufficient to state a claim for relief, and they likewise are insufficient to establish that this action meets the amount-in-controversy requirement.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (alterations in *Iqbal*)).

The plaintiff has ignored his burden to present *evidence* supporting the required amount in controversy.  *See Griffith v. EduCap, Inc.*, No. 16-cv-1541 (DLF), 2019 WL 4737064, at *2

(D.D.C. Sept. 27, 2019) ("[I]f the plaintiff's claimed sum is 'disputed by his opponent or by the court sua sponte,' it is the plaintiff's burden to establish with evidence 'that it does not appear to a legal certainty that the claim is for less than the jurisdictional amount.'" (quoting *Payne v. Gov't of D.C.*, 559 F.2d 809, 820 & n.59 (D.C. Cir. 1977) (footnote omitted))).  He has not even put forth plausible allegations of fact.  *See* Mot. 16-19.  The only remotely "factual" assertion the plaintiff alleges to show some degree of harm is that plaintiff is a practicing attorney with "a clean disciplinary history."  Opp'n 28.  Even if that were true, however, the plaintiff does not attempt to explain that any alleged harm has actually occurred, let alone has been caused by Professor Frisch's blog posts—as opposed to, for example, the detailed factual allegations of misconduct that were pending against the plaintiff and detailed in public decisions for over thirteen years.  *See* Exhibits 1-5.  The plaintiff's vague intimation that he "will" present evidence of harm to the jury is not sufficient, and would turn the pleading standard on its head.  The plaintiff was required to present *some* evidence to support the required amount in controversy, and he did not.  The Court should find that it does not have subject matter jurisdiction on that basis alone.

Moreover, the plaintiff cannot invoke presumed or punitive damages as refuge from the required amount in controversy.  He cites *El-Hadad v. Embassy of the United Arab Emirates*, for example (Opp'n 26), but that case does not address subject matter jurisdiction, much less at the pleading stage.  *See* No. 96-cv-1943 (RWR), 2006 WL 826098, at *15 (D.D.C. Mar. 29, 2006), *rev'd in part on other grounds*, 496 F.3d 658 (D.C. Cir. 2007).  Instead, *El-Hadad* held that the plaintiff, during a bench trial, had "offered evidence to prove damages for loss of reputation and standing in his professional community, as well as humiliation and mental anguish," and the defendant did nothing to rebut that evidence.  *Id.* at *18.  In any event, even "presumed" damages "must be supported by *competent evidence concerning the injury*," *Gertz v. Robert Welch, Inc.*,

418 U.S. 323, 349-50 (1974) (emphasis added), and "punitive damages must be proportional" to an actual injury, *Freeman Holdings of Ariz., L.L.C. v. Does, 1-50*, No. CV-11-01877-PHX-NVW, 2013 WL 210810, at *4 (D. Ariz. Jan. 18, 2013).  The plaintiff has presented no such evidence, nor has he alleged any specific, plausible facts to suggest that evidence exists.

The bare assertion of presumed or punitive damages does not confer federal subject matter jurisdiction; if that were the case, federal courts would have jurisdiction over *every* defamation case across the country between citizens of different states.  *Freeman Holdings* illustrates the frailties of the plaintiff's position.  The plaintiff attempts to distinguish *Freeman Holdings* on the ground that the "Plaintiff *will* present evidence of harm to the jury, unlike the *Freeman Holdings* plaintiff, who stated that he would not."  Opp'n 29 (emphasis in Opp'n).  But, just like in *Freeman Holdings*, the plaintiff offers no explanation of the evidence of harm he claims he will present to the jury.  *See Freeman Holdings*, 2013 WL 210810, at *3-4.  The only difference between this case and *Freeman Holdings* is that the plaintiff here has failed to plead or adduce any evidence, whether in his Complaint or Opposition—thereby implying that he has none—rather than expressly admitting that he has none.  The result is the same: no plausible facts supporting jurisdiction.  The bare assertion of presumed or punitive damages, without any evidence or even specific allegations of harm, is not a substitute for proper pleading under *Iqbal*/*Twombly*.

Finally, the admissions and concessions in the Opposition confirm that this is not a case involving an amount in controversy that rises anywhere near $75,000.  As explained in Part I, *supra*, the plaintiff has conceded that his claims are limited to Professor Frisch's November 8, 2018 blog post—therefore, any potential damages are limited to those caused by that blog post specifically.  Further, on January 3, 2020, the plaintiff voluntarily dismissed Law Professor Blogs, pursuant to an agreement to remove Professor Frisch's blog post from the Internet.  Opp'n 3; Dkt.

11.[2]   With the post removed, the plaintiff has no ongoing damages.  In light of these severe

limitations on damages, and the plaintiff's failure to actually plead *any* harm, it is legally certain

that the plaintiff cannot recover damages exceeding $75,000.  This Court lacks jurisdiction.

### III.   THE PLAINTIFF FAILS TO ADDRESS THE EFFECT OF *COMPETITIVE ENTERPRISE INSTITUTE v. MANN* ON THE ANTI-SLAPP ACT

In his Anti-SLAPP Motion, Professor Frisch explained in detail why the District of

Columbia Anti-SLAPP Act of 2010, D.C. Code § 16-5501 et seq. ("Anti-SLAPP Act"), applies in

this Court, and why each of the non-binding cases in this District holding otherwise was wrongly

decided.  Mem. Supp. Special Mot. Dismiss (Dkt. 14-1) ("Anti-SLAPP MTD") at 15-27.  Instead

of addressing the merits of Professor Frisch's arguments, however, the plaintiff fails to engage

with any of them, pleading the Court to just fall in line with these prior cases.  Opp'n 29-34.  The

Court need not and should not do so.

Notably, the plaintiff does not respond to and has thus conceded Professor Frisch's

argument that, if the Anti-SLAPP Act applies in federal court, it applies in this case because

Professor Frisch's statements were in furtherance of the right of advocacy on issues of public

interest.  *See* Anti-SLAPP MTD 28-30.  Thus, if the Anti-SLAPP Act applies, the Complaint must

be dismissed with prejudice because the plaintiff's claims are not likely to succeed on the merits.

### A.   The Plaintiff's Argument that the Anti-SLAPP Act Does Not Apply Rests Entirely on the Flawed Reasoning of Non-Binding District Court Decisions.

As Professor Frisch has explained in depth, Anti-SLAPP MTD 15-27, the D.C. Circuit in

*Abbas* applied a construction of the Anti-SLAPP Act that is in tension with the Federal Rules of

Civil Procedure.  *See Abbas v. Foreign Policy Grp., LLC*, 783 F.3d 1328, 1333 (D.C. Cir. 2015).

In *Mann*, however, the D.C. Court of Appeals explicitly dismissed the central conclusion of *Abbas*

---

[2] Professor Frisch was not involved in that agreement or the decision to take down the post.

by holding that the Anti-SLAPP Act does not mirror the standards imposed by Federal Rule 56, so there is no conflict between the Rules and the Anti-SLAPP Act.  *Competitive Enter. Inst. v. Mann*, 150 A.3d 1213, 1238 n.32 (D.C. 2016), *as amended* Dec. 13, 2018.  Because *Mann* "clearly and unmistakably" demonstrates that *Abbas* was mistaken in its interpretation on a question of D.C. law as to which the D.C. Court of Appeals has the final word, "this Court should apply the D.C. [Court of Appeals'] more recent expression of the law" and apply the Anti-SLAPP Act here. *Easaw v. Newport*, 253 F. Supp. 3d 22, 35 (D.D.C. 2017).  Cases concluding otherwise are not binding on this Court, are not persuasive, and were wrongly decided.  Anti-SLAPP MTD 19-22.

In his Opposition, the plaintiff simply cites and quotes from these cases without bothering to address directly the arguments laid out by Professor Frisch.  Opp'n 30-33.  In light of *Mann*'s holdings that the Anti-SLAPP Act creates a "substantive right" and does not conflict with the Federal Rules of Civil Procedure, *Mann*, 150 A.3d at 1231, 1238 n.32, and given the lack of D.C. Circuit precedent regarding the effect of *Mann*'s explicit rejection of *Abbas*, the plaintiff's claim that the issue is "settled" (Opp'n 29) is absurd.  This Court is as qualified as the Circuit Court to apply the substantive law of the District of Columbia.  *Easaw*, 253 F. Supp. 3d at 35.

While the plaintiff cites additional district court cases as purportedly supporting his argument that the Anti-SLAPP Act cannot apply here, these cases are irrelevant to the question here.  First, in *Democracy Partners v. Project Veritas Action Fund*, the court did not address the argument that *Mann* supersedes *Abbas* (or cite *Mann* at all), but merely concluded that *Abbas* applied in cases where supplemental jurisdiction is at issue.  285 F. Supp. 3d 109, 127-28 (D.D.C. 2018).  Second, in *Cockrum v. Donald J. Trump for President, Inc.*, the court did not need to reach the issue of the defendants' anti-SLAPP motions because it dismissed the case for lack of personal jurisdiction and improper venue.  319 F. Supp. 3d 158, 174-91 (D.D.C. 2018).  Although the court

did deny the defendants' anti-SLAPP motions in a footnote, it did so without analysis, merely

citing *Democracy Partners* and *Deripaska v. Associated Press*, No. 17-00913 (ESH), 2017 WL

8896059 (D.D.C. Oct. 17, 2017), *appeal dismissed*, No. 17-7164, 2017 WL 6553388 (D.C. Cir.

Dec. 8, 2017).  *Id.* at 165 n.2.  Third, the court in *Akhmetshin v. Browder* dismissed for lack of

personal jurisdiction and did not need to reach the defendant's anti-SLAPP motion, but denied the

motion in a footnote without analysis.  407 F. Supp. 3d 11, 18 n.9 (D.D.C. 2019), *appeal filed*, No.

19-1729 (D.C. Cir. Oct. 15, 2019).  None of these cases bears on the Court's analysis here.

## B.     The Plaintiff Attempts To Mislead the Court by Misrepresenting the Holdings of Out-of-Circuit Cases.

The plaintiff's assertion that "the majority of federal circuits and numerous federal district

courts to have considered the issue of the applicability of Anti-SLAPP statutes in federal courts

have now refused to apply state Anti-SLAPP statutes in their purest form given their procedural

nature" is misleading at best.  Opp'n 33. The cases the plaintiff cites for this proposition, Opp'n

33 n.3, do not in any way establish that "the majority of federal circuits" have refused to apply

anti-SLAPP statutes in federal courts.  Indeed, two of the cases cited by the plaintiff held that the

anti-SLAPP statutes at issue *were* applicable in federal court.  *See Planned Parenthood Fed'n of

Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828, 835 (9th Cir. 2018); *Verizon Del., Inc. v. Covad

Commc'ns Co.*, 377 F.3d 1081, 1091 (9th Cir. 2004).

All but one of the remaining federal circuit court cases cited by the plaintiff merely held

the particular state anti-SLAPP statutes at issue in those cases inapplicable under specific

circumstances not present here.  In *Klocke v. Watson*, the Fifth Circuit held that the Texas anti-

SLAPP statute does not apply in federal court, but did not overturn a prior case applying in federal

court the Louisiana anti-SLAPP statute—which is more similar to the D.C. Anti-SLAPP Act than

the Texas law.  936 F.3d 240, 248-49 (5th Cir. 2019) (discussing *Henry v. Lake Charles Am. Press,*

*LLC*, 566 F.3d 164 (5th Cir. 2009)).  In *Los Lobos Renewable Power, LLC v. Americulture, Inc.*, the Tenth Circuit declined to apply the New Mexico anti-SLAPP statute because it affects only the *timing*, not the *outcome*, of a SLAPP suit.  885 F.3d 659, 673 (10th Cir. 2018), *cert. denied*, 139 S. Ct. 591 (Dec. 3, 2018).  And in *Intercon Solutions, Inc. v. Basel Action Network*, the Seventh Circuit declined to apply the Washington anti-SLAPP statute because the Supreme Court of Washington had held it invalid under Washington state law, and *explicitly* declined to decide whether other anti-SLAPP statutes apply in federal court.  791 F.3d 729, 731-32 (7th Cir. 2015).

Ultimately, the plaintiff cites only one federal circuit court case, other than *Abbas*, that held an anti-SLAPP statute similar to the D.C. Anti-SLAPP Act did not apply in federal court—and it is a case not binding on this Court.  *See generally Carbone v. Cable News Network, Inc.*, 910 F.3d 1345 (11th Cir. 2018).  And the plaintiff does *not* cite cases from other circuits that have *applied* anti-SLAPP statutes in federal court.  For example, in *Godin v. Schencks*, the First Circuit held that the Maine anti-SLAPP statute applies in federal court.  629 F.3d 79, 91 (1st Cir. 2010).  And in *Adelson v. Harris*, the Second Circuit applied portions of Nevada's anti-SLAPP act in a diversity action.  774 F.3d 803, 809 (2d Cir. 2014); *see also* Anti-SLAPP MTD 25.

The district court decisions cited by the plaintiff, Opp'n 33 n.3, are also inapplicable.  Most of these cases concerned other state laws and are inapplicable here.  *See Platinum Press, Inc. v. Douros-Hawk*, No. 3:18-CV-00458-GCM, 2018 WL 6435331, at *2-3 (W.D.N.C. Dec. 7, 2018); *Unity Healthcare, Inc. v. Cty. of Hennepin*, 308 F.R.D. 537, 550 (D. Minn. 2015), *appeal dismissed*, No. 15-2489, 2016 WL 11339506 (8th Cir. 2016); *Intercon Sols., Inc. v. Basel Action Network*, 969 F. Supp. 2d 1026, 1047 (N.D. Ill. 2013), *aff'd on other grounds*, 791 F.3d 729 (7th Cir. 2015); *In re Gawker Media LLC*, 571 B.R. 612, 633 (Bankr. S.D.N.Y. 2017).  The only case involving the D.C. Anti-SLAPP Act precedes both *Abbas* and *Mann*, and it rests on the conclusion

(which is incorrect in light of *Mann*) that the Anti-SLAPP Act is procedural because it does not protect a substantive right of immunity. *ABLV Bank v. Ctr. for Advanced Def. Studies Inc.*, No. 1:14-cv-1118, 2015 WL 12517012, at *2-3 (E.D. Va. Apr. 21, 2015).

In any event, should the Court determine that the Anti-SLAPP Act does not apply (and also decide not to dismiss on the other grounds presented in the motion), the Court should certify an interlocutory appeal to the D.C. Circuit under 28 U.S.C. § 1292(b). *See* Anti-SLAPP MTD 27. The plaintiff did not oppose this request in his Opposition.

### C.   The Plaintiff Concedes that Professor Frisch's Blog Post Was an Act in Furtherance of the Right of Advocacy on Issues of Public Interest.

Professor Frisch's statements were made "in furtherance of the right of advocacy on issues of public interest." D.C. Code § 16-5502(a); *see* Anti-SLAPP MTD 28-30. The plaintiff does not address this element anywhere in the Complaint or Opposition, and therefore concedes it.[3] *Chan Chan v. Children's Nat'l Med. Ctr.*, No. 18-cv-2102 (CKK), 2019 WL 4471789, at *7 (D.D.C. Sept. 18, 2019); *see also, e.g.*, *Texas v. United States*, 798 F.3d 1108, 1109 (D.C. Cir. 2015).

### D.   The Claims in the Complaint Could Not Prevail as a Matter of Law.

D.C.'s Anti-SLAPP Act, as interpreted by *Mann*, further requires a showing that the plaintiff's claims "could not prevail as a matter of law." *Mann*, 150 A.3d at 1236. The parties appear to agree that the claims in the Complaint could not prevail as a matter of law if the Complaint fails to state a claim under Federal Rule of Civil Procedure 12(b)(6). *See* Anti-SLAPP MTD 30-37; Opp'n 34. For the reasons discussed below, therefore, if the Court concludes that the Anti-SLAPP Act applies in federal court, the Complaint must be dismissed with prejudice.

---

[3] By not addressing this element, the plaintiff implicitly concedes that his disciplinary proceeding was a matter of public controversy in the context of his defamation claim. *See infra* Part IV.A.1.

## IV.     THE COMPLAINT FAILS TO STATE A CLAIM FOR DEFAMATION

The Opposition makes no attempt to cure the deficiencies in the Complaint that Professor Frisch addressed in the Motion to Dismiss.  Instead, the Opposition simply invokes conclusory truisms, like the fact that "[t]he law affords a cause of action for damage to a person's reputation by the publication of defamatory statements," Opp'n 6, and relies on factually inapposite cases, *e.g.*, *id.* at 8 (page-long recitation of facts of a Supreme Court case from 1979).  Those arguments are nonresponsive to the question of whether the plaintiff has actually stated a claim.  Disregarding the "legal conclusions, legal contentions couched as factual allegations, and unsupported factual allegations within the complaint," *see Gulf Coast Mar. Supply, Inc. v. United States*, 867 F.3d 123, 128 (D.C. Cir. 2017), the Complaint does not state a claim for defamation.  *See* MTD 22-41.

To state a claim for defamation, the plaintiff must plausibly allege *all four* elements: (1) that the plaintiff was the subject of a false and defamatory statement; (2) the statement was published to a third party; (3) publishing the statement was at least negligent (or, for a public figure such as the plaintiff, that it was done with actual malice); and (4) the plaintiff suffered actual or legal harm.  *Id.* at 23, 34-39 (citing *Farah v. Esquire Magazine*, 736 F.3d 528, 534 (D.C. Cir. 2013)).  Only the second element is adequately pled, so the Complaint should be dismissed.[4]

### A.     The Plaintiff Is a "Public Figure" Because He Played a Significant Role in the Disciplinary Proceeding, Which Focused Primarily on His Past Conduct.

The plaintiff (Opp'n 9) agrees that *Kahl v. Bureau of Nat'l Affairs, Inc.*, 856 F.3d 106, 114 (D.C. Cir. 2017), *cert. denied*, 138 S. Ct. 366 (2017), set forth a three-part test in evaluating whether a plaintiff is a public figure.  *See* MTD 34.  First, a court evaluates whether the relevant

---

[4] As to the fourth element, the plaintiff still has not pled any plausible, non-conclusory facts showing harm caused by the alleged defamation. *See supra* Part II.  The plaintiff's refusal to make *any* concrete allegations of harm means that he has not alleged an essential element of the defamation claim, and it therefore must be dismissed under Rule 12(b)(6). *See* MTD 40-41.

controversy is a "public controversy." *Id.* Second, the court determines whether the plaintiff played a "significant role" in the controversy. *Id.* Third, the court evaluates whether the defamatory statement is "germane" to the plaintiff's participation in the controversy. *Id.*

This more recent test is an elaboration of the one set forth by the Supreme Court in *Gertz v. Robert Welch, Inc.*, 418 U.S. 323 (1974), on which the plaintiff heavily relies. Opp'n 7. However, the plaintiff mischaracterizes the holding of *Gertz*. He describes the case as holding that "[p]ublic figures are those who have thrust themselves to the forefront of particular public controversies in order to influence the resolution of the issues, or otherwise invite attention and comment." *Id.* But *Gertz* also explicitly held that an individual who did not "voluntarily inject[] himself" into public controversy may nevertheless become a public figure by being "drawn into a particular public controversy"—which is what happened to the plaintiff here. *See* 418 U.S. at 351 ("[A]n individual voluntarily injects himself *or is drawn into* a particular public controversy and thereby becomes a public figure for a limited range of issues." (emphasis added)). The Court explained that "[i]t is preferable to reduce the public-figure question to a more meaningful context by looking to the nature and extent of an individual's participation in the particular controversy." *Id.* at 352. Unlike in *Gertz*, the plaintiff in this case did not play a "minimal role" in the disciplinary proceedings initiated against him. *See id.* Quite to the contrary, the conduct of the plaintiff (and his father) was the very focus of these public proceedings.

The plaintiff's attempt (Opp'n 8-9) to analogize this case to *Wolston v. Reader's Digest Ass'n, Inc.*, 443 U.S. 157 (1979) also fails. *Wolston* involved a large-scale, two-year investigation of various "Soviet intelligence agents in the United States," the result of which led to the arrest of the Wolston's aunt and uncle. 443 U.S. at 157. Wolston was subpoenaed to appear before a grand jury investigating his relatives and failed to comply, and he ultimately pled guilty to contempt. *Id.*

Reader's Digest published a book with a passage naming Wolston "'[a]mong Soviet agents identified in the United States' and 'convicted of . . . contempt charges following espionage indictments,'" when he was in fact never an identified Soviet agent nor indicted for espionage.  *Id*. There was no connection between the controversy in which Reader's Digest *implicated* Wolston (being a Soviet spy) and the one he was *actually* involved in (flouting a grand jury subpoena).  In this case, there is no such disconnect: the public controversy about which Professor Frisch commented, *i.e.*, the disciplinary proceeding, was the very same public controversy in which the plaintiff was a central figure.  The plaintiff did not "simply . . . becom[e] involved in or associated with a matter that attract[ed] public attention," Opp'n 9; rather, the plaintiff's own conduct was the subject of a public disciplinary proceeding.

> 1.  *The Disciplinary Proceeding Involving the Plaintiff Was a "Public Controversy" Because the Proceeding Involved Cases in at Least Four Forums and Had Substantial Ramifications for Nonparticipants.*

Despite his protestations otherwise, Opp'n 9-10, the plaintiff has effectively conceded that the disciplinary proceeding against him was a "public controversy."  The plaintiff *himself* averred in the Complaint that "the articles at issue in this case [about the proceeding] are widely read and circulated in the District of Columbia."  Compl. ¶ 4.  In his Opposition, he again conceded this point by not contesting the related argument that Professor Frisch's blog posts were "on matters of public interest."  *See supra* Part III.C.

Even if the plaintiff had not already expressly conceded that his conduct and disciplinary proceeding was a public controversy, he *has* acknowledged, Opp'n 10, that an issue is a public controversy if it is "being debated publicly and if it ha[s] foreseeable and substantial ramifications for nonparticipants."  *Waldbaum v. Fairchild Publ'ns, Inc.*, 627 F.2d 1287, 1297 (D.C. Cir. 1980), *cert. denied*, 449 U.S. 898 (1980).  There is no question that the plaintiff's conduct and the related disciplinary proceeding constitute a public controversy under *Waldbaum*.

13

The plaintiff's disciplinary proceeding was certainly "being debated publicly" before the D.C. Board on Professional Responsibility and the D.C. Court of Appeals, involving cases in at least four forums, spanning more than a decade.  *See* MTD 35 (citing Compl. ¶¶ 25-26).  Indeed, the November 8, 2018 decision of the D.C. Court of Appeals itself involved public "debate," as the majority opinion was over a dissent from Judge Steadman.  *In re Szymkowicz*, 195 A.3d 785, 792-93 (D.C. 2018) (Steadman, J., dissenting).  Further, the plaintiff's statement that, "[o]utside of Professor Frisch's blog posts, Plaintiff is not aware of any article about the disciplinary proceedings in his case, other than a single article published a few weeks after the Hearing Committee issued its report in 2012," Opp'n 10, is an outright misrepresentation.  The plaintiff is certainly aware of at least one of the articles cited in Professor Frisch's Motion, MTD 35 n.14, *because the plaintiff himself* cited that same article (a 2014 article in the Georgetown Journal of Legal Ethics) in a March 29, 2019 letter to the Office of Disciplinary Counsel, while trying to file a complaint about the disciplinary proceedings.  Complaint Ex. 6 at 17, *Klayman v. Office of Disciplinary Counsel*, No. 2020 CA 000756 B (D.C. Super. Ct. Jan. 31, 2020) (attached to this Reply as **Exhibit 6**).[5]

The plaintiff also makes the implausible assertion that the disciplinary proceedings involving him had no "'foreseeable' or 'substantial ramifications' for non-participants."  Opp'n 10.  To the contrary, as the Hearing Committee chairman's law partner wrote, "It is the only case known to the Hearing Committee that squarely deals with the difference between legal competency and legal capacity. . . . The report cites the relevant cases and other authorities that are pertinent and useful to practitioners."  Compl. Ex. 1 at 2.  Similarly, in the D.C. Court of Appeals' most

---

[5] It is not immediately clear how Mr. Klayman obtained the March 29, 2019 letter from the plaintiff, but its citation by another party in in an unrelated court proceeding only confirms that the plaintiff's disciplinary proceeding is a public controversy.

recent decision in the plaintiff's disciplinary proceeding, Judge Steadman's dissent noted that "[b]ar discipline proceedings are designed to ensure that attorneys abide by the rules of professional conduct that their license demands and to protect the public accordingly." *Szymkowicz*, 195 A.3d at 792.  Further, the decisions in the disciplinary proceedings have been cited extensively.  *See In re Askew*, No. 17-BG-0152, slip op. at 11 (D.C. Feb. 20, 2020); *In re Schwartz*, 221 A.3d 925, 928 (D.C. 2019); *In re Robbins*, 192 A.3d 558, 564 (D.C. 2018); *In re Green*, 143 A.3d 778, 779 (D.C. 2016); *In re Silverman*, Va. St. Bar No. 18-000-111671, 2018 WL 2926010, at *8 (Va. St. Disp. Bd. May 24, 2018); 31 Am. Jur. Trials § 633 (2020); Burkoff, Crim. Def. Ethics § 6.2 (2d Ed. 2019); Krauskopf *et al.*, 1 Elderlaw Advoc. Aging §§ 2.5, 2.5 (2d Ed. 2019); 2P1 Nichols Cyclopedia Legal Forms § 27:16 (2019); Stein, Trial Handbook for D.C. Law. § 1:11 (2019).

### 2.   *The Plaintiff Played a "Significant Role" in the Disciplinary Proceeding and Underlying Conduct.*

The plaintiff argues that he did not play a "significant role" in the disciplinary proceeding into which he was "involuntarily brought."  Opp'n 11.  That is simply untrue.  In evaluating whether a plaintiff had a "significant role" in the disciplinary proceeding and underlying conduct, the Court should consider "the plaintiff's *past conduct*, the extent of press coverage, and the public reaction to his conduct or statements."  *Kahl*, 856 F.3d at 115 (emphasis added).  The plaintiff's past conduct in his representation of Genevieve Ackerman was undeniably the source and subject of the bar disciplinary proceeding brought against him.  The plaintiff played a significant role in the disciplinary proceeding and in the events leading to it, even if he did not want to be involved.

### 3.   *Professor Frisch's Blog Posts Were "Germane" to the Plaintiff's Involvement in the Disciplinary Proceeding and Underlying Conduct.*

Professor Frisch's blog posts are "germane" to the disciplinary proceeding and underlying conduct involving the plaintiff.  MTD 36; *see Kahl*, 856 F.3d at 114.  Although it is true that

Professor Frisch's statements were intended to provide a "passionate criticism of the District of Columbia attorney discipline system," rather than an attack on the plaintiff, Opp'n at 11 (quoting MTD 27-28), that fact does not preclude a finding of "germaneness" for purposes of the public figure inquiry.   The germaneness inquiry aims "to ensure that the allegedly defamatory statement—whether true or not—is related to the plaintiff's role in the relevant public controversy." *Jankovic v. Int'l Crisis Grp.*, 822 F.3d 576, 589 (D.C. Cir. 2016), *cert. denied*, 137 S. Ct. 1434 (2017).  Professor Frisch's statements were clearly "related to the plaintiff's role in the relevant public controversy"—indeed, the plaintiff cannot seriously argue otherwise, or he would admit that he was not the subject of a statement which he claims was false and defamatory.

### B.      Professor Frisch's Statements, Viewed in Context, Were Not False or Capable of Defamatory Meaning.

The plaintiff's Opposition ignores a fundamental principle in defamation law: a court must consider the context in which alleged defamatory statements are made rather than viewing them as isolated remarks in a vacuum.   In evaluating whether a statement is defamatory, "the First Amendment demands that we place these references *in their proper context*." *Weyrich v. New Republic, Inc.*, 235 F.3d 617, 625 (D.C. Cir. 2001) (emphasis added).   "This provides assurance that public debate will not suffer for lack of imaginative expression or the rhetorical hyperbole which has traditionally added much to the discourse of our Nation." *Id*. at 624 (quoting *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 20 (1990) (internal quotation marks omitted)).  The Opposition ignores this bedrock principle for a simple reason: viewed in context, Professor Frisch's statements cannot be understood as false or "reasonably capable of any defamatory meaning." *Id.* at 627.

For this reason, the plaintiff's claim of shock that Professor Frisch did not directly cite *Milkovich* falls flat.   *See* Opp'n 1, 13-15.  Professor Frisch cited binding D.C. Circuit cases that discuss and apply *Milkovich*, including *Moldea v. N.Y. Times Co.*, which explained that *Milkovich*

did "not abandon[] the consideration of context in defamation actions." 22 F.3d 310, 314 (D.C. Cir. 1994). To the contrary, as *Moldea* confirmed, "*Milkovich* reaffirmed the vitality" of two earlier Supreme Court cases that rejected defamation claims premised on the use of words that allegedly implied criminal activity. *Id.* (citing *Milkovich*, 497 U.S. at 16-17; *Old Dominion Branch No. 496, Nat'l Ass'n of Letter Carriers, AFL-CIO v. Austin*, 418 U.S. 264 (1974); *Greenbelt Coop. Publ'g Ass'n v. Bresler*, 398 U.S. 6 (1970)). The *Moldea* court explained that *Bresler* and *Letter Carriers*, which found that words sometimes associated with criminal activity were not defamatory when viewed in context (as discussed below), were still good law after *Milkovich*. *Id.*

The plaintiff's criticism that Professor Frisch did not cite *Mann* also misses the mark. *See* Opp'n 1, 13-15. First, Professor Frisch cited *Mann* as critical to the proper construction of the Anti-SLAPP Act. *See supra* Part III.A; *see generally* Anti-SLAPP MTD. And because—as described below—*Mann*'s facts differ vastly from those here, he relied instead on more apposite D.C. Circuit precedent for his arguments about the sufficiency of the plaintiff's defamation claim. In any event, *Mann* just confirms the importance of context and supports Professor Frisch's argument: "If, for example, an average reader would likely understand that particular words, in the context of an entire article, were not meant to imply factual data but, rather, were intended merely to disagree strongly with the views of the [plaintiff], those words would be protected despite their factual content." *Competitive Enter. Inst. v. Mann*, 150 A.3d 1213, 1241 (D.C. 2016), *as amended* Dec. 13, 2018 (quoting *Sigal Const. Corp. v. Stanbury*, 586 A.2d 1204, 1211 (D.C. 1991) (alteration in *Mann*)).

Just as the plaintiff ignores the importance of context to defamation law, he also completely ignores that Professor Frisch's blog post provided the full context of the disciplinary proceeding. The Complaint acknowledges, as it must, that the very first sentence of Professor Frisch's blog

post ("The District of Columbia Court of Appeals has in a per curiam decision affirmed the most pro-attorney, anti-public protection recommendation in the history of the D.C. discipline system.") contained a link to the full decision. Compl. ¶ 35. This is in stark contrast to the defendant in *Mann*, whose "article gave a skewed and incomplete picture of the facts a reader would need to come to his or her own conclusions on the matter." *Mann*, 150 A.3d at 1247. With the decision of the D.C. Court of Appeals "just [one] mouseclick[] away, any potential misreading of the [blog post] can easily be averted." *Trudeau v. FTC*, 456 F.3d 178, 197 (D.C. Cir. 2006). In light of the link to the decision, no reasonable reader could have understood Professor Frisch as suggesting he was privy to facts not set forth in the disciplinary decisions. *See* MTD 26-33; *Mullane v. Breaking Media, Inc.*, No. 18-12618-PBS, 2020 WL 58455 (D. Mass. Jan. 6, 2020), *appeal filed*, No. 20-1062 (1st Cir. Jan. 16, 2020).

For these same reasons, Professor Frisch's statements were a "supportable interpretation" of the record in the plaintiff's disciplinary proceeding (of which the plaintiff agrees the Court should take judicial notice, Opp'n 3 n.1). *See Moldea*, 22 F.3d at 313; *see also* MTD 29. The plaintiff's attempt to distinguish the "supportable interpretation" standard in *Moldea* relies wholly on language about literary commentary that is self-evidently inapplicable here. *See* Opp'n 17.

In arguing that Professor Frisch's statements are false and capable of defamatory meaning, the plaintiff relies exclusively on the argument that Professor Frisch's statements are defamatory per se. Opp'n 12-13. The plaintiff points to two specific phrases in Professor Frisch's blog post: "elder abuse" and "misconduct." *Id.* at 13. Even a cursory review of the blog post, however, demonstrates that there is no defamatory use of "misconduct": the only occurrences of the word "misconduct" in the blog post refer to the disciplinary charges against the plaintiff—specifically the violation of D.C. Rule of Professional Conduct 1.7 (conflicts of interest)—that were discussed

throughout the disciplinary record.  *See* Compl. Ex. 1 at 1-2.  The plaintiff's defamation claim thus boils down to the assertion that "elder abuse" refers to criminal conduct.  *See* Opp'n 13.

That argument fails because, in context, a reasonable reader would have understood that Professor Frisch was not accusing the plaintiff of committing a crime.  There is no language in Professor Frisch's blog post suggesting that he was referring to a crime—to the contrary, every instance of "elder abuse" or "elder care abuse" is accompanied by a reference to professional ethics, not criminality.  Compl. Ex. 1 at 1 ("Elder Abuse Conflict"); *id.* (referring to conduct simultaneously as "a gross conflict of interest" and "horrific elder abuse"); *id.* ("the ethics of elder care abuse").  The D.C. Code does not even have a crime expressly labeled "elder abuse"; rather, the crimes are "criminal abuse of a vulnerable adult or elderly person" and "financial exploitation of a vulnerable adult or elderly person."  *See* D.C. Code §§ 22-931 et seq.  The blog post even favorably quoted Judge Steadman's dissent, who *disagreed* that criminal law was relevant.  Compl. Ex. 1 at 1; *Szymkowicz*, 195 A.3d at 792 ("I disagree that the structure of criminal law presents a fair analogy.  Bar discipline proceedings are designed to ensure that attorneys abide by the rules of professional conduct that their license demands and to protect the public accordingly.").

Simply using a word that may in some contexts be associated with criminality does not automatically make a statement defamatory per se.  For example, in *Bresler*, the Supreme Court held that a reference to a developer having "blackmailed" a city was not defamation, because, in context, the reference described the developer's negotiation tactics—not criminal activity.  398 U.S. at 13; *see also* MTD 32.  Additionally, the Supreme Court has held that a claim based on the label "scab," with a partial meaning of "traitor," was not actionable as defamation because it could not have been understood to refer to the crime of treason.  *Letter Carriers*, 418 U.S. at 283-85.  "'Rhetorical hyperbole,' which would not reasonably be understood in context as being fully and

literally true, is not actionable." *Wood v. Am. Fed'n. of Gov't Emps.*, 316 F. Supp. 3d 475, 488 (D.D.C. 2018) (quoting *Mann*, 150 A.3d at 1241) (holding that a statement that the plaintiff was a "gang member" and a "crook" was "non-actionable hyperbole"), *aff'd*, No. 18-7124, 2019 WL 668337 (D.C. Cir. Feb. 12, 2019).

Other courts have held that hyperbolic statements like Professor Frisch's are not actionable as defamation. For example, in *Horsley v. Rivera*, the Eleventh Circuit held that the defendant's claim on a talk show that the plaintiff was "an accomplice to homicide" was non-actionable hyperbole because it was made during "an emotional debate concerning emotionally-charged issues of significant public concern." 292 F.3d 695, 701-02 (11th Cir. 2002). Similarly, in *Schnare v. Ziessow*, the defendant published an article accusing the plaintiff and the other parties of perpetrating "half-truths, innuendoes and outright lies." 104 F. App'x 847, 849 (4th Cir. 2004). The Fourth Circuit held that the statements were not defamatory because, under the circumstances, a "reasonable reader would . . . recognize this 'accusation' of lying as just an 'expression of outrage,' much like an accusation by a talk show host that the Eleventh Circuit held was rhetorical hyperbole." *Id.* at 852 (citing *Horsley*, 292 F.3d at 701-02).

### C.    Professor Frisch's Statements Fall Under the "Fair Comment" and "Fair Report" Privileges Because His Statements Consistently and Fairly Drew Upon the Official Disciplinary Proceedings.

The plaintiff completely ignores the relevant standards for the "fair comment" privilege. The fair comment privilege applies "[s]o long as the comment is the speaker's actual opinion, based on fact, about a matter of public interest." *Fisher v. Wash. Post Co.*, 212 A.2d 335, 337 (D.C. 1965); *see also* MTD 33-34. Instead of addressing Professor Frisch's argument, the plaintiff suggests that the fair comment privilege extends only to artistic criticism. *See* Opp'n 18. Not so.

The plaintiff also argues that Professor Frisch's statements do not fall under the "fair report" privilege discussed in *OAO Alfa Bank v. Center for Public Integrity*, 387 F. Supp. 2d 20

(D.D.C. 2005).  *See* Opp'n 19.  As the plaintiff concedes, "the fair report privilege will apply when it is apparent either from specific attribution or from the overall context that the article is quoting, paraphrasing, or otherwise drawing upon official documents or proceedings, and the article is a fair and accurate account of the document or proceeding."  *Id.* (citing *OAO Alfa Bank*, 387 F. Supp. 2d at 40 (internal quotation marks omitted)).  It is readily apparent from context that Professor Frisch's blog post drew upon the official record of the disciplinary proceedings[6]: it links to the Court of Appeals decision and cites to both the majority and the dissent, and it refers to the entire disciplinary record.  Compl. Ex. 1 at 1.  And it is also apparent that the blog post is a fair and accurate account of that disciplinary record, including the D.C. Court of Appeals' statements that "[t]here was a substantial dispute" as to whether "Ms. Ackerman was not competent and respondents knew or should have known that she was incompetent and wrongfully took advantage of Ms. Ackerman to benefit themselves and Dr. Ackerman," *Szymkowicz* 195 A.3d at 787, and "if the Szymkowiczes had borne the burden of proving the adequacy of Ms. Ackerman's consent, they would have failed to carry their burden."  *Id.* at 790.

Presented with similar facts, in *Mullane*, Chief Judge Saris concluded that the allegedly defamatory statements at issue fell under the privilege of fair reporting because they provided a "'rough-and-ready summary'" of the plaintiff law student's hearing "that was 'substantially correct.'"  2020 WL 58455, at *4 (quoting *Yohe v. Nugent*, 321 F.3d 35, 43 (1st Cir. 2003)).  In light of the full disciplinary record, it is clear that Professor Frisch's statements were "substantially correct."  *See* Exhibits 1-5.

---

[6] Professor Frisch did not need to use the words "report claimed" or "report said" for the fair reporting privilege to apply, as the plaintiff implies.  Opp'n 19.  Rather, the court in *OAO Alfa Bank* stated that using such language "*more than* satisfies the attribution requirement for the privilege."  *OAO Alfa Bank*, 387 F. Supp. 2d at 41 n.40 (emphasis added).

**D.**      **The Plaintiff's Argument that the Statements Were Made with Actual Malice Relies on a Mischaracterization of the Disciplinary Proceedings.**

The plaintiff's primary argument pertaining to actual malice is that Professor Frisch published his blog posts "knowing that Plaintiff Szymkowicz has been repeatedly exonerated by the Hearing Committee, the Board on Professional Responsibility and the Court of Appeals in reports and opinions that found no elder abuse, no fraud, no misconduct, no deceit, no misrepresentation." Opp'n 6; *see also id.* at 21. That is not what happened. To the contrary, the disciplinary proceedings culminated in a D.C Court of Appeals decision on a disputed record:

> There was a substantial dispute before the Hearing Committee as to whether Ms. Ackerman was competent during the relevant time period, or whether instead Ms. Ackerman was not competent and *respondents knew or should have known that she was incompetent and wrongfully took advantage of Ms. Ackerman* to benefit themselves and Dr. Ackerman.

*Szymkowicz*, 195 A.3d at 787 (citing *In re Szymkowicz*, 124 A.3d 1078, 1081-86 (D.C. 2015) (emphasis added)). The court ultimately concluded that Disciplinary Counsel failed to meet its "burden of proving the inadequacy of the consent [by Ms. Ackerman], by clear and convincing evidence," but it noted that, "if the Szymkowiczes had borne the burden of proving the adequacy of Ms. Ackerman's consent, they would have failed to carry their burden." *Id.* at 790.

The plaintiff's assertion (Opp'n 6) that he was "exonerated" is merely wishful thinking. In reality, the underlying facts relating to the Szymkowiczes' representation of Ms. Ackerman were hotly contested, and the D.C. Court of Appeals noted that the plaintiff would have been unable to prove the adequacy of Ms. Ackerman's consent, had *he* borne the burden. *Szymkowicz*, 195 A.3d at 790. Although the court upheld the conclusion that Disciplinary Counsel had not met her burden, the court noted that it "fully understand[s] Disciplinary Counsel's concerns about the Szymkowiczes' conduct in this case." *Id.* In light of this record, there is no basis for anyone— including Professor Frisch—to have "actually kn[own]" that Professor Frisch's statements were

false, or to have "in fact entertained serious doubts as to the truth" of those statements.  *See* Opp'n 19-20 (quoting *Mann*, 150 A.3d at 1252).  Thus, Professor Frisch did not act with "actual malice" or "reckless disregard for the truth."  *See Mann*, 150 A.3d at 1252; *see also* MTD 37-39.

The plaintiff's related argument that Professor Frisch exhibited "bias in favor of Ms. Porter and [a] desire to take up the cudgel after Ms. Porter's embarrassing defeat and tarnish Plaintiff's reputation" is also unfounded.  *See* Opp'n 23.  None of Professor Frisch's blog posts about the plaintiff or his disciplinary proceedings mentioned Ms. Porter, and any alleged bias in favor of Ms. Porter and against the Hearing Committee does not establish bias against the *plaintiff*.  As the plaintiff points out, Opp'n 23, the court in *Herbert v. Lando* observed in a footnote that "the existence of actual malice may be shown" by "circumstances indicating the existence of rivalry, ill will, or hostility between the parties."  441 U.S. 153, 164 n.12 (1979) (quoting 50 Am. Jur. 2d Libel and Slander § 455 (1970)).  The plaintiff has not alleged any circumstances indicating the "existence of a rivalry, ill will, or hostility" between him and Professor Frisch.

Although the plaintiff does not actually argue that Professor Frisch acted negligently (he merely argues that a negligence standard applies, Opp'n 12), any negligence argument would fail too, because Professor Frisch made a reasonable investigation into the facts of the proceeding, *see* MTD 39-40, as the plaintiff himself concedes, Opp'n 25-26.

## V.     THE COMPLAINT ALSO FAILS TO STATE A CLAIM FOR FALSE LIGHT OR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

The plaintiff has not responded to Professor Frisch's argument that the claims for false light and intentional infliction of emotional distress must fail if the defamation claim fails.  MTD 41-44.  Accordingly, if the Court dismisses the plaintiff's defamation claim, it should also dismiss the remaining claims.  His other arguments about why the ancillary claims survive independently are not persuasive.

### A.     The False Light Claim Fails as a Matter of Law.

The plaintiff "may not avoid the strictures of the burdens of proof associated with defamation by resorting to a claim of false light invasion." *Klayman v. Segal*, 783 A.2d 607, 619 (D.C. 2001) (quoting *Moldea v. N.Y. Times Co.*, 22 F.3d 310, 319 (D.C. Cir. 1994)).  The standard for this claim is whether the statements would be offensive to a reasonable person. *Armstrong v. Thompson*, 80 A.3d 177, 188-89 (D.C. 2013).  Here, the plaintiff appears to argue (Opp'n 25) that, because the plaintiff is a practicing attorney, there is some special, stronger "offensiveness" standard, but that is not the case.  The plaintiff offers no case law to support the assertion that some "special value" should be placed on the plaintiff's reputation because he is an attorney.  Further, the plaintiff has not shown that he suffered mental distress from "having been exposed to public view," and he cannot show that, since the disciplinary proceeding exposed the plaintiff to public view on the same matter long before Professor Frisch's blog post.  *See* MTD 42-43.

### B.     The Intentional Infliction of Emotional Distress Claim Fails as a Matter of Law.

The plaintiff claims again, incorrectly, that Professor Frisch accused him of the crime of "elder abuse."  Opp'n 25.  As explained *supra*, Part IV.B, that assertion fails.

The plaintiff himself relies on Professor Frisch's argument (MTD 40) that he "reached his opinions" based on his study of the disciplinary proceeding.  That admission that Professor Frisch was stating an opinion negates any idea that the statements were "so extreme in degree, as to go beyond all possible bounds of decency."  *See Competitive Enter. Inst. v. Mann*, 150 A.3d 1213, 1260 (D.C 2016), *as amended* Dec. 13, 2018.  It is axiomatic that the expression of an opinion is protected by the First Amendment.  *FCC v. Pacifica Found.*, 438 U.S. 726, 745-46 (1978) ("[I]f it is the speaker's opinion that gives offense, that consequence is a reason for according it constitutional protection.").

*El-Hadad v. Embassy of the United Arab Emirates*, cited by the plaintiff, Opp'n 26, is inapposite because it does not discuss a claim for intentional infliction of emotional distress.  No. 96-cv-1943 (RWR), 2006 WL 826098, at *15 (D.D.C. Mar. 29, 2006), *rev'd in part on other grounds*, 496 F.3d 658 (D.C. Cir. 2007).  Even if the Court were to accept that defamation per se is "likely to cause mental and emotional distress" (if the plaintiff had adequately alleged defamation per se, which he has not), the plaintiff still has not alleged any specific, plausible facts to show that he suffered *severe* emotional distress as required to state a claim for intentional infliction of emotional distress.  *Mann*, 150 A.3d at 1260.  Instead, paragraphs 58 and 59 of the Complaint merely set out "a boilerplate recitation" of emotional harm "unaccompanied by any factual detail."  *Smith v. Clinton*, 886 F.3d 122, 128 (D.C. Cir. 2018), *cert. denied*, 139 S. Ct. 459 (2018) (dismissing a claim for intentional infliction of emotional distress).

Finally, as a public figure, the plaintiff must additionally show that Professor Frisch's statements were false and made with actual malice.  *Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46, 56 (1988); MTD 44.  The plaintiff failed to plead any facts to support those elements, as discussed *supra*, and failed to address this aspect of his intentional infliction of emotional distress claim in his Opposition.  Under any standard, this claim, like the others, fails.

## CONCLUSION

For the foregoing reasons, and for the reasons stated in his opening memoranda, Professor Frisch respectfully requests that his Motions to Dismiss be granted and the Complaint be dismissed with prejudice.

Respectfully submitted,

DATED: February 20, 2020

   /s/ *Matthew J. Rizzolo*            
Matthew J. Rizzolo (D.C. 991577)
Jonathan R. Ference-Burke (D.C. 1001179)
Ryan C. Brunner (D.C. 241467)
ROPES & GRAY LLP
2099 Pennsylvania Avenue, NW
Washington, DC 20006
Telephone:  (202) 508-4600
Facsimile:  (202) 508-4650
Matthew.Rizzolo@ropesgray.com
Jonathan.Ference-Burke@ropesgray.com
Ryan.Brunner@ropesgray.com

*Counsel for Defendant Michael Frisch*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 20th of February, 2020, the foregoing reply in support of Professor Frisch's motions to dismiss was filed electronically using the Court's CM/ECF system.  Plaintiff John P. Szymkowicz is represented by registered CM/ECF users and will be served by the CM/ECF system.


   /s/   *Matthew J. Rizzolo*
Matthew J. Rizzolo
*Counsel for Defendant Michael Frisch*