UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JOHN PAUL SZYMKOWICZ,

          Plaintiff,

    v.

MICHAEL STUART FRISCH,

         Defendant.

Civil Action No. 19-3329 (BAH)

Chief Judge Beryl A. Howell

## MEMORANDUM OPINION

Plaintiff John Paul Szymkowicz, an attorney and member in good standing of the bars of three states and the District of Columbia, claims that he was defamed in five blog posts published between October, 2012 and November, 2018 on the website "Legal Profession Blog," and authored by defendant Michael Stuart Frisch, a legal ethics professor. Compl. ¶¶ 2–3, 28–35, ECF No. 1. These blog posts reported on District of Columbia bar disciplinary proceedings involving plaintiff, which lasted approximately eleven years and ultimately resulted in dismissal of all bar charges against plaintiff on November 8, 2018. *See id.* ¶¶ 1, 26–35. When defendant failed to respond to plaintiff's demand for a retraction of the last blog post, plaintiff initiated this lawsuit, in November 2019, asserting claims for defamation, *id.* ¶¶ 38–47, invasion of privacy – false light, *id.* ¶¶ 48–54, and intentional infliction of emotional distress, *id.* ¶¶ 55–63.

Defendant now moves to dismiss this action, under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), and the District of Columbia Anti-SLAPP Act. *See* Def.'s Mot. to Dismiss Pursuant to Fed. Rules of Civil Proc. 12(b)(1) and 12(b)(6) ("Def.'s 12(b) Mot."), ECF No. 13; Def.'s Special Mot. to Dismiss Pursuant to the Dist. of Columbia Anti-SLAPP Act ("Def.'s Anti-SLAPP Mot."), ECF No. 14. For the following reasons, defendant's 12(b) motion is granted and this action is dismissed for lack of subject matter jurisdiction.

**I.     BACKGROUND**

The events leading up to this suit spanned nearly two decades and involved several separate legal proceedings, but that history need only be recounted briefly to resolve the pending motions. In 2002, nonparty Mary Frances Abbott established a revocable trust for her parents, nonparties Stephen Ackerman, Sr. and Genevieve Ackerman, and "signed the trust documents on behalf of both parents as their attorney-in-fact," making her husband, nonparty Frank Abbott, the trustee. Compl. ¶ 12; *see also In re Szymkowicz* (*In re Szymkowicz II*), 195 A.3d 785, 786–87 (D.C. 2018) (per curiam); *In re Szymkowicz* (*In re Szymkowicz I*), 124 A.3d 1078, 1079 (D.C. 2015) (per curiam).[1] Soon thereafter, Abbott's brother and the Ackermans' son, nonparty Stephen Ackerman, Jr., expressed unhappiness with the trust and hired plaintiff and his father, nonparty John T. Szymkowicz, who is also an attorney ("the Szymkowiczes"), to represent him in an action in D.C. Superior Court to reform the trust. Compl. ¶ 13; *In re Szymkowicz II*, 195 A.3d at 787. In 2005, the Szymkowiczes were also hired by Genevieve Ackerman to represent her in a separate, second action in D.C. Superior Court to reform the trust. Compl. ¶ 13; *In re Szymkowicz II*, 195 A.3d at 787. In March 2007, however, the Szymkowiczes withdrew as Genevieve Ackerman's counsel in the second suit, after being alerted by counsel for trustee Frank Abbott that plaintiff's father would be called as a witness in the case. Compl. ¶ 14; *In re Szymkowicz II*, 195 A.3d at 787. The Szymkowiczes continued to represent the son in his suit. Compl. ¶ 14.

Despite the Szymkowiczes' voluntary withdrawal as counsel to Genevieve Ackerman, the District of Columbia Office of Bar Counsel (now called the District of Columbia Office of

---

[1]     Some of this background is drawn from the decisions of the District of Columbia Court of Appeals concerning plaintiff's bar disciplinary proceedings. Such decisions are properly subject to judicial notice. *See Strike 3 Holdings, LLC v. Doe*, No. 18-7188, 2020 WL 3967836, at *8 (D.C. Cir. July 14, 2020) (noting that "district courts may properly take judicial notice of proceedings and filings in other courts").

Disciplinary Counsel) initiated disciplinary proceedings against the Szymkowiczes based on a complaint filed by Mary Frances Abbott against plaintiff's father in 2005 and another filed against plaintiff "two years later." *Id.* ¶ 17.  "There was a substantial dispute before the Hearing Committee [of the District of Columbia Board on Professional Responsibility ('Hearing Committee')] as to whether Ms. Ackerman was competent during the relevant time period, or whether instead Ms. Ackerman was not competent and [the Szymkowiczes] knew or should have known that she was incompetent and wrongfully took advantage of Ms. Ackerman to benefit themselves and Dr. [Stephen] Ackerman[, Jr.]"  *In re Szymkowicz II*, 195 A.3d at 787.  "The Hearing Committee found that although Ms. Ackerman had some mental limitations, she was competent," and that conclusion was ultimately upheld by, first, the D.C. Board on Professional Responsibility ("Board"), and, ultimately, the D.C. Court of Appeals. *Id.*; *see generally In re Szymkowicz I*, 124 A.3d 1078.  The D.C. Court of Appeals remanded, though, for further consideration of whether the Szymkowiczes had obtained informed consent from Genevieve Ackerman to represent both her and her son simultaneously.  *In re Szymkowicz I*, 124 A.3d at 1086.

During the initial hearing, the Hearing Committee had "heard and credited testimony that [plaintiff's father] 'many times' discussed with Ms. Ackerman potential conflicts and risks arising out of [his] joint representation of Ms. Ackerman and [her son]." *In re Szymkowicz II*, 195 A.3d at 787. [2]  Thus, on remand the Board decided the case on the existing evidentiary record, and "concluded that the Szymkowiczes had introduced evidence of informed consent and that Disciplinary Counsel had failed to prove by clear and convincing evidence that they had

---

[2] The Hearing Committee, the Board, and the D.C. Court of Appeals focused on plaintiff's father's conduct because Disciplinary Counsel argued that plaintiff was liable only if his father was liable.  *See In re Szymkowicz II*, 195 A.3d at 788.  According to the complaint, plaintiff "was a relatively young attorney at th[e] time [of Genevieve Ackerman's litigation to reform the trust] and played a limited role in the case."  Compl. ¶ 15.

3

failed to obtain informed consent." *Id.* at 788.  Accordingly, the Board "recommend[ed] that the case against the Szymkowiczes be dismissed."  Compl. ¶ 24.

The case then returned to the D.C. Court of Appeals, before which the outcome "turn[ed] on the allocation of the burden of proof."  *In re Szymkowicz II*, 195 A.3d at 789 (internal quotation mark omitted) (quoting *In re Allen*, 27 A.3d 1178, 1187 (D.C. 2011)).  The Court of Appeals "agree[d] with Disciplinary Counsel" that "if the Szymkowiczes had borne the burden of proving the adequacy of Ms. Ackerman's consent, they would have failed to carry their burden."  *Id.* at 790.  Yet, it concluded that the burden of proof in fact lay with Disciplinary Counsel, and observed that Disciplinary Counsel "d[id] not appear to have attempted to elicit a complete and specific record of precisely what [plaintiff's father] did and did not say to Ms. Ackerman on the topic of conflict of interest."  *Id.*  The Court of Appeals thus concluded: "[A]lthough we fully understand Disciplinary Counsel's concerns about the Szymkowiczes' conduct in this case, we accept the Board's conclusion that the Szymkowiczes were not shown by clear and convincing evidence to have violated [the District of Columbia Rules of Professional Conduct]."  *Id.* at 790–91.

While these disciplinary proceedings were ongoing, defendant published five articles on the website "Legal Profession Blog" that commented on the decisions of the Hearing Committee, the Board, and the D.C. Court of Appeals.  On October 22, 2012, defendant wrote an article entitled "The Worst Hearing Committee Report in D.C. History," which asserted that the Hearing Committee's initial decision "reflect[ed] the most superficial reasoning and failure to comprehend fundamental principles of legal ethics that [defendant had] seen in nearly 30 years of reading these reports."  Compl. ¶ 28.  On July 28, 2014, defendant published a second article, entitled "Worst Report Affirmed," accusing the Hearing Committee of ignoring evidence "in aid

of its steadfast desire to find no misconduct." *Id.* ¶ 29.  On September 17, 2016, after the D.C. Court of Appeals remanded the Szymkowiczes' case, defendant "published a third article, this time describing the Hearing Committee as 'obviously rogue.'" *Id.* ¶ 30.  Then, on May 22, 2017, defendant published a fourth article, entitled "The Most Blatant Regulatory Failure in D.C. Bar History Nears a Conclusion," which, according to the complaint, accused the Szymkowiczes "of instituting 'frivolous' litigation, helping their client 'loot his mother's estate,' and 'stage managing' the representation of Mrs. Ackerman after they withdrew from her representation." *Id.* ¶ 31.  Finally, on November 8, 2018—the date the D.C. Court of Appeals issued its final decision—defendant published his fifth and last article at issue in this case, entitled "District of Columbia Court Absolves Attorneys of Horrific Elder Abuse Conflict," which stated that "[a]s a consequence" of the decision of the D.C. Court of Appeals, "attorneys who clearly engaged in a gross conflict of interest get off scot-free for horrific elder abuse." *Id.* ¶ 35.

"On or about August 30, 2019, [plaintiff] demanded a retraction of the November 8, 2018 article in a letter, and, on or about September 7, 2019, emailed a pdf of this letter to [defendant] and Paul L. Caron, owner and/or manager of Law Professor Blogs, LLC." *Id.* ¶ 36.  Plaintiff's demand, however, was ignored. *Id*. ¶¶ 1, 37.  Accordingly, on November 5, 2019, plaintiff initiated the present suit against defendant, *see generally id.* at ¶¶ 1–63, to which defendant responded by filing the pending motions.[3]  After multiple extensions requested by the parties and the filing of supplemental briefing, these motions became ripe for resolution on June 25, 2020.[4]

---

[3] Plaintiff also sued Law Professor Blogs, LLC, "the publisher of the 'Legal Profession Blog,'" Compl. ¶ 6, but approximately two months after filing his complaint, plaintiff "voluntarily dismissed Law Professor Blogs, LLC pursuant to a settlement agreement after it removed all blog posts that mention [plaintiff]."  Pl.'s Mem. Opp'n Def.'s Mots. ("Pl.'s Opp'n") at 3, ECF No. 17; *see* Pl.'s Notice of Voluntary Dismissal Pursuant to Fed. R. Civ. P. 41(a)(1)(A)(i), ECF No. 11; Pl.'s Am. Notice of Voluntary Dismissal Pursuant to Fed. R. Civ. P. 41(a)(1)(A)(i), ECF No. 15.

[4] Defendant requested oral argument, *see* Def.'s 12(b) Mot. at 1; Def.'s Anti-SLAPP Mot. at 1, but given the thorough briefing, a hearing is unnecessary, *see* LCvR 7(f) (authorizing oral hearings at "the discretion of the Court").

## II.     LEGAL STANDARD

"Article III of the Constitution prescribes that '[f]ederal courts are courts of limited subject-matter jurisdiction' and 'ha[ve] the power to decide only those cases over which Congress grants jurisdiction.'" *Bronner ex rel. Am. Studies Assoc. v. Duggan*, 962 F.3d 596, 602 (D.C. Cir. 2020) (alterations in original) (quoting *Al-Zahrani v. Rodriguez*, 669 F.3d 315, 317 (D.C. Cir. 2012)); *see Gunn v. Minton,* 568 U.S. 251, 256 (2013) ("'Federal courts are courts of limited jurisdiction,' possessing 'only that power authorized by Constitution and statute.'" (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994))). Federal courts therefore have a corresponding "independent obligation to ensure that they do not exceed the scope of their jurisdiction" and "must raise and decide jurisdictional questions that the parties either overlook or elect not to press." *Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 434 (2011). Absent subject-matter jurisdiction over a case, the court must dismiss it. *See Arbaugh v. Y & H Corp.*, 546 U.S. 500, 506–07 (2006); FED. R. CIV. P. 12(h)(3).

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1), the plaintiff thus "bears the burden of invoking the court's subject matter jurisdiction." *Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015). The court must accept as true "factual allegations in the complaint and 'construe the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged.'" *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quoting *Thomas v. Principi*, 394 F.3d 970, 972 (D.C. Cir. 2005)). At the same time, when a jurisdictional skirmish "present[s] a dispute over the factual basis of the court's subject matter jurisdiction," "the court must go beyond the pleadings and resolve" any dispute necessary to the disposition of the motion to dismiss. *Feldman v. FDIC*, 879 F.3d 347, 351 (D.C. Cir. 2018) (alteration in original) (internal quotation mark omitted) (quoting *Phoenix*

*Consulting v. Republic of Angl.*, 216 F.3d 36, 40 (D.C. Cir. 2000)).  In doing so, the "court may properly consider . . . evidentiary material in the record," again affording the plaintiff "the benefit of all reasonable inferences."  *Id.* at 351; *see also Am. Freedom Law Ctr. v. Obama*, 821 F.3d 44, 49 (D.C. Cir. 2016) ("[W]e 'may consider materials outside the pleadings in deciding whether to grant a motion to dismiss for lack of jurisdiction.'" (quoting *Jerome Stevens Pharm., Inc. v. FDA*, 402 F.3d 1249, 1253 (D.C. Cir. 2005))).

## III.   DISCUSSION

Plaintiff asserts diversity jurisdiction over this action, pursuant to 28 U.S.C. § 1332, "since the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs," and plaintiff and defendant "are citizens of different states."  Compl. ¶ 7.  Defendant challenges this assertion of subject matter jurisdiction for failure to meet the requisite monetary threshold.  *See* Def.'s Mem. P. & A. Supp. Def.'s 12(b) Mot. ("Def.'s 12(b) Mem.") at 16, ECF No. 13-1.[5]  The standard applicable to assessing the sufficiency of pleading diversity jurisdiction is addressed first, followed by analysis of whether the standard is satisfied here, and then consideration of plaintiff's counterarguments.[6]

---

[5]   Defendant does not dispute that the diversity-of-citizenship requirement is satisfied.  *See* Def.'s 12(b) Mem. at 16–19.

[6]   Defendant also argues that plaintiff's claims are partially time-barred, *see* Def.'s 12(b) Mem. at 19–22, that plaintiff has failed to state a claim, *see id.* at 22–44, and that—despite the overwhelming number of decisions from this Court unanimously holding otherwise, *see Arpaio v. Zucker*, 414 F. Supp. 3d 84, 93 (D.D.C. 2019); *Akhmetshin v. Browder*, 407 F. Supp. 3d 11, 18 n.9 (D.D.C. 2019); *Fridman v. Bean LLC*, No. 17-cv-2041 (RJL), 2019 WL 231751, at *2 (D.D.C. Jan. 15, 2019); *Cockrum v. Donald J. Trump for President, Inc.*, 319 F. Supp. 3d 158, 165 n.2 (D.D.C. 2018); *Fairbanks v. Roller*, 314 F. Supp. 3d 85, 94 (D.D.C. 2018); *Libre By Nexus v. Buzzfeed, Inc.*, 311 F. Supp. 3d 149, 159 (D.D.C. 2018); *Democracy Partners v. Project Veritas Action Fund*, 285 F. Supp. 3d 109, 127 (D.D.C. 2018); *Deripaska v. Associated Press*, No. 17-cv-00913 (ESH), 2017 WL 8896059, at *3 (D.D.C. Oct. 17, 2017)—the D.C. Anti-SLAPP Act applies in federal court and requires dismissal of plaintiff's claims, *see generally* Def.'s Mem. P. & A. Supp. Def.'s Anti-SLAPP Mot., ECF No. 14-1.  Defendant is ultimately correct that plaintiff has failed to establish subject matter jurisdiction, giving the Court no occasion to opine on the merits of these other arguments.

### A.     Pleading Diversity Jurisdiction

Federal courts have "original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interests and costs, and is between citizens of the different states." 28 U.S.C. § 1332(a)(1). Thus, subject matter jurisdiction over any action raised in diversity must satisfy a two-prong inquiry: (1) the amount in controversy must exceed $75,000, and (2) the litigants must be diverse from one another. *See id.* Here, as noted, defendant argues only that the amount-in-controversy requirement has not been satisfied. Def.'s 12(b) Mem. at 16.

"[T]he party asserting jurisdiction"—here, plaintiff—"always bears the burden of establishing the amount in controversy." *Rosenboro v. Kim*, 994 F.2d 13, 17 (D.C. Cir. 1993). Yet, "the sum claimed by the plaintiff controls," "if the claim is apparently made in good faith." *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288 (1938) (footnotes omitted). Once the plaintiff makes a good faith claim, dismissal is warranted only if, "it is apparent, to a legal certainty, that the plaintiff cannot recover the amount claimed." *Id.* at 289; *see also id.* ("It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal.").

In applying the "legal certainty" test, the D.C. Circuit has explained that "the Supreme Court's yardstick demands that courts be very confident that a party cannot recover the jurisdictional amount before dismissing the case for want of jurisdiction." *Rosenboro*, 994 F.2d at 17. Nevertheless, "once a party's allegations of jurisdictional facts are challenged," the party claiming jurisdiction "must produce evidence supporting a legal uncertainty about whether she could prove" the amount asserted. *Rosenboro*, 994 F.2d at 18; *see also Bronner*, 962 F.3d at 610 ("'While the "legal certainty" test is an exacting one,' 'we have emphasized that . . . the party

8

asserting jurisdiction always bears the burden of establishing the amount in controversy once it has been put in question.'" (omission in original) (citations omitted) (first quoting *Martin v. Gibson*, 723 F.2d 989, 991 (D.C. Cir. 1983) (per curiam); and then quoting *Rosenboro*, 994 F.2d at 17)).  Thus, "dismissal is warranted if, for example, the [party] 'submit[s] *no* . . . evidence' supporting [her] alleged injury." *Bronner*, 962 F.3d at 610 (emphasis and omission in original) (quoting *Rosenboro*, 994 F.2d at 17).

### B. Plaintiff Has Not Sufficiently Alleged The Amount In Controversy

Plaintiff pleads that "the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs." Compl. ¶ 7.  As support, he further claims that defendant's allegedly defamatory statements "were injurious to [his] career and reputation," *id.* ¶ 44, "giv[ing] rise to presumed damages, as well as to economic and punitive damages to [him]," *id.* ¶ 46, worth "an amount to be determined at trial, but not less than the jurisdictional minimum of this Court," *id.* ¶ 47; *see also, e.g.*, *id.* ¶ 51 (asserting that defendant's statements "caused [plaintiff] damage, including, but not limited to severe emotional distress, loss of income and loss of business opportunity").  Defendant, however, contends that these pleadings are insufficient, because plaintiff "has averred no well-pled facts showing that he could be entitled to more than $75,000, so this Court lacks subject matter jurisdiction." Def.'s 12(b) Mem. at 19.

Starting with the "good faith" portion of the amount-in-controversy inquiry, defendant has provided no sound reason to suspect that plaintiff has alleged his damages in bad faith.  To be sure, plaintiff, in estimating his damages, states only that "the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs," Compl. ¶ 7—which is, conveniently, the jurisdictional threshold, *see* Def.'s 12(b) Mem. at 18 (pointing out that plaintiff "nowhere even attempts to quantify his alleged damages" and "did not [fill] in *any* dollar amount

on the Civil Cover Sheet" (emphasis in original)). Yet, "[e]vidence that the plaintiff has drafted his complaint with an eye toward the amount-in-controversy requirement does not, by itself, demonstrate the legal deficiency of his claim for damages or that he has acted in bad faith," *Saiyed v. Council on Am.-Islamic Relations Action Network, Inc.*, 742 F. Supp. 2d 84, 89 (D.D.C. 2010) (finding jurisdiction when plaintiff sought "damages 'not yet quantified but no less than $75,001' for 'severe emotional, mental, and physical distress'" (quoting the plaintiff's complaint)); *see also, e.g.*, *Dibble v. Avrich*, No. 14-CIV-61264, 2014 WL 6632629, at *3 (S.D. Fla. Nov. 21, 2014) (same when plaintiff did not quantify damages beyond alleging that "the matter in controversy exceed[ed] the sum or value of $75,000"); *Zenergy, Inc. v. Coleman*, No. 09-CV-0381-CVE-FHM, 2009 WL 3571314, at *4 (N.D. Okla. Oct. 26, 2009) (same when plaintiff "generally assert[ed] that it . . . [was] entitled to damages in excess of $75,000"). Thus, plaintiff has satisfied his initial burden to plead the amount in controversy in good faith. *Accord Naffe v. Frey*, 789 F.3d 1030, 1041 (9th Cir. 2015) ("[T]he record is devoid of 'independent facts [to] show that the amount of damages was claimed merely to obtain federal court jurisdiction.'" (second alteration in original) (quoting *Pachinger v. MGM Grand Hotel–Las Vegas, Inc.*, 802 F.2d 362, 364 (9th Cir. 1986))); *Feuerstein v. Simpson*, 582 Fed. App'x 93, 98–99 (3d Cir. 2014) ("[The defendant] has failed to point to any evidence indicating that [the plaintiff] lacked a good faith belief that his original claim was insufficient to create federal diversity jurisdiction.").

This, however, is not the end of the analysis, for defendant maintains that "it is legally certain that the plaintiff cannot recover damages exceeding $75,000," Def.'s Reply Mem. Supp. Def.'s Mots. ("Def.'s Reply") at 6, ECF No. 19, thus placing the burden on plaintiff to "establish[] the amount in controversy," *Bronner*, 962 F.3d at 610 (quoting *Rosenboro*, 994 F.2d at 17) (explaining that this burden is triggered when the amount in controversy is "put in

question"); *see also Smith v. Washington*, 593 F.2d 1097, 1100 (D.C. Cir. 1978) ("[W]hen a defendant controverts the plaintiff's assertion that the claim meets the jurisdictional amount, 'a factual issue emerges and the burden of establishing jurisdictional amount is thrust upon claimant.'" (quoting *Gomez v. Wilson*, 477 F.2d 411, 420 (D.C. Cir. 1973))).  Unlike the "good faith" test, the legal certainty test "adds an objective element to [the amount-in-controversy] inquiry."  *Bronner*, 962 F.3d at 605.  Accordingly, plaintiff's claims must be examined with an eye toward whether plaintiff has supplied a basis for determining that their value exceeds the jurisdictional threshold.  *See id.* at 610 (explaining that "[i]t is true that a plaintiff need not provide an exact valuation or detailed breakdown of damages at the outset of litigation, as the claimed sum controls if 'apparently made in good faith,'" but that "it does not follow that any unsupported claim will suffice" (quoting *St. Paul Mercury*, 303 U.S. at 288)).

Plaintiff has failed to carry his burden.  He maintains that defendant's statements "have caused injury to his personal and professional reputation; have caused injury to his standing in the community; have caused economic damages, loss of income, and loss of business opportunity; and have caused mental anguish and personal humiliation."  Pl.'s Resp. Def.'s Suppl. Not. ("Pl.'s Suppl. Resp.") at 2, ECF No. 21; *see* Compl. ¶ 1 (claiming that defendant's statements "result[ed] in damage to [plaintiff], his law practice, and to his professional and personal reputation"); *id.* ¶ 44 (claiming that defendant's statements "were injurious to [plaintiff's] career and reputation"); *id.* ¶ 51 (claiming that defendant's statements "caused [plaintiff] damage, including, but not limited to severe emotional distress, loss of income and loss of business opportunity"); *id.* ¶¶ 52, 59 (claiming that defendant's statements "impaired" "[plaintiff's] standing and reputation among the community" and led plaintiff to "suffer[] financially" and "suffer[] mental anguish and personal humiliation").  Defendant correctly

observes, however, that these are mere descriptions of "the *types* of harm the plaintiff claims to have suffered." Def.'s 12(b) Mem. at 18 (emphasis in original). That is not enough. The D.C. Circuit recently instructed that a party invoking diversity jurisdiction must do more than "vaguely assert . . . economic and reputational damage," as well as, here, emotional damages. *Bronner*, 962 F.3d at 609. Rather, he must "explain *how* [he] ha[s] suffered" those harms. *Id.* at 610 (emphasis in original).[7]

Plaintiff never attempts to explain how he has suffered his alleged damages. He does not, for instance, assert that he has lost clients as a result of defendant's blog posts. Nor does he claim that he has been unable to pursue professional opportunities because his reputation has been purportedly tarnished. To the contrary, he alleges that "[h]e is a member in good standing of the Bars of the District of Columbia, the State of Maryland, the State of New York, and the Commonwealth of Virginia." Compl. ¶ 2. Moreover, he does not plead that defendant's statements have caused any persons to doubt that he retains good standing with the aforementioned bars, nor does he otherwise attempt to connect his bar status to his damages claims. Without explanations of this sort, no grounds exist for determining that plaintiff's damages could exceed $75,000.[8]

---

[7] *Bronner* was decided after the completion of initial briefing on the pending motions but both parties submitted supplemental filings addressing the import of *Bronner* for exercise of subject matter jurisdiction over this case. *See* Def.'s Notice Suppl. Auth. Supp. Def.'s Mots., ECF No. 20; Pl.'s Suppl. Resp.

[8] Plaintiff's failure to explain his damages is particularly glaring given his alleged "suffer[ing] financially." Compl. ¶¶ 52, 59; *see id.* ¶ 44 (claiming that defendant's statements "were injurious to [plaintiff's] career"); *id.* ¶ 51 (claiming injuries in the form of "loss of income and loss of business opportunity"). Such pecuniary losses constitute "special damages," which, pursuant to Federal Rule of Civil Procedure 9(g), "must be specifically stated." FED. R. CIV. P. 9(g); *see FAA v. Cooper*, 566 U.S. 284, 295–96 (2012) ("'Special damages' are limited to actual pecuniary loss, which must be specially pleaded and proved. 'General damages,' on the other hand, cover 'loss of reputation, shame, mortification, injury to the feelings and the like and need not be alleged in detail and require no proof.'" (citations and footnote omitted) (quoting 1 D. Haggard, Cooley on Torts § 164, pp. 579–80 (4th ed. 1932))). Plaintiff makes no effort to meet this requirement. *Cf. Smith v. Clinton*, 886 F.3d 122, 128 (D.C. Cir. 2018) (per curiam) (determining that plaintiffs failed to allege special damages in defamation case when "[t]he complaint merely contain[ed] a boilerplate recitation, unaccompanied by any factual detail, that '[a]s a direct and proximate result of [defendant's] statements, [plaintiffs] have suffered pecuniary damage, as well as injury to reputation,

12

Ultimately, plaintiff concedes, *see* Pl.'s Opp'n at 29, that he has thus far "'submitted no . . . evidence' supporting [his] alleged injury," *Bronner*, 962 F.3d at 610 (alteration and emphasis omitted) (omission in original) (quoting *Rosenboro*, 994 F.2d at 17), but promises that he "**will present evidence of harm to the jury**," Pl.'s Opp'n at 29 (bold in original).  Plaintiff clearly misunderstands his burden.  He is obligated to produce support for his damages claims at this jurisdictional juncture, not just in the future.  *See Rosenboro*, 994 F.2d at 18 (explaining that a party claiming diversity jurisdiction "must produce evidence supporting a legal uncertainty about whether she could prove" that her damages exceed the jurisdictional threshold); *Griffith v. EduCap, Inc.*, No. 16-cv-1541 (DLF), 2019 WL 4737064, at *2 (D.D.C. Sept. 27, 2019) ("[I]f the plaintiff's claimed sum is 'disputed by his opponent or by the court sua sponte,' it is the plaintiff's burden to establish with evidence 'that it does not appear to a legal certainty that the claim is for less than the jurisdictional amount.'" (quoting *Payne v. Gov't of D.C.*, 559 F.2d 809, 820 & n.59 (D.C. Cir. 1977) (opinion of Robinson, J.))); *see also McNutt v. Gen. Motors Acceptance Corp. of Ind.*, 298 U.S. 178, 189 (1936) ("If [a party's] allegations of jurisdictional facts are challenged by his adversary in any appropriate manner, he must support them by competent proof.").  Indeed, this is not a situation where discovery would enable plaintiff to present a stronger case at trial than he can now; the facts related to his potential damages—such as loss of business—are particularly within his control.  Yet, plaintiff has not even offered to amend his complaint to address the deficiencies defendant identifies.  By declining to provide support, plaintiff has failed to establish that this Court has jurisdiction to consider his claims further.

---

impairment to standing in their community, personal humiliation, pain and suffering, and emotional distress'" (third alteration in original) (quoting the plaintiffs' complaint)).

13

In sum, plaintiff "ha[s] provided nothing beyond a bare-bones assertion of jurisdictional sufficiency to suggest that the monetary damages arising from [his] . . . claims even remotely approach $75,000." *Bronner*, 962 F.3d at 610. "This is not enough to carry [his] burden." *Id.*[9]

### C. Plaintiff's Counterarguments Are Unavailing

In an effort to salvage his case, plaintiff presents three counterarguments, but none is persuasive.

First, plaintiff argues that, under *Bronner,* "a legal certainty attaches when a specific rule or law or measure of damages limits recovery to an amount under the jurisdictional limit," and "there is no such limitation here." Pl.'s Suppl. Resp. at 1. This misreads *Bronner*. While *Bronner* explained that showing that "a specific rule of substantive law or measure of damages limits the amount of money recoverable by the plaintiff" is *one* way to satisfy the legal certainty test, *Bronner*, 962 F.3d at 605 (quoting 14AA CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 3713 (4th ed. 2011)), the D.C. Circuit made clear that the legal certainty test is *also* met when a plaintiff fails to support his damages claims, *see id.* at 610. This case falls into the latter category.

Second, plaintiff contends that, because he alleges defamation *per se*, he "is entitled to pursue 'presumed damages'—damages that may be awarded even in the absence of evidence of

---

[9] Defendant also argues that the amount-in-controversy requirement is not satisfied because plainitff's claims based on blog posts published *before* November 5, 2018 are time-barred, such that "any potential damages are limited to those caused by [the November 8, 2018] blog post." Def.'s Reply at 5; *see also* Def.'s 12(b) Mot. at 19–22. In this respect, defendant misses the mark. Most Circuits have determined that "in assessing whether a plaintiff has satisfied the amount in controversy threshold for diversity jurisdiction," "affirmative defenses," such as "the running of a statute of limitations," "should be ignored because they can be waived," *Tompkins v. Stifel*, No. 18-cv-1212 (CRC), 2019 WL 634657, at *2 (D.D.C. Feb. 14, 2019), and the D.C. Circuit recently confirmed that "federal courts are not divested of [diversity] jurisdiction simply because a valid defense exists," *Bronner*, 962 F.3d at 602; *see also Rosenboro*, 994 F.2d at 19 n.4 ("[D]efenses cannot be considered in determining the amount in controversy.").

specific pecuniary harm." Pl.'s Suppl. Resp. at 1.[10] The mere invocation of presumed damages, however, is not enough to cross the jurisdictional threshold. True, "under the doctrine of presumed damages a party is not required to show specific loss." *Republic Tobacco Co. v. N. Atl. Trading Co.*, 381 F.3d 717, 734 (7th Cir. 2004). Yet, presumed damages still "serve a compensatory function." *Id.*; *see Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 310 (1986) ("Presumed damages are a *substitute* for ordinary compensatory damages, not a *supplement* for an award that fully compensates the alleged injury." (emphases in original)); *Airlie Found., Inc. v. Evening Star Newspaper Co.*, 337 F. Supp. 421, 431 (D.D.C. 1972) (explaining that presumed damages are meant only "to compensate for lost reputation" and not "to punish the defendant for wilful and wanton misconduct"). As a result, presumed damages may not be awarded "in a substantial amount to a party who has not demonstrated evidence of

---

[10] If plaintiff is a public figure or defendant's speech involves a matter of public concern, the First Amendment requires that plaintiff establish that defendant made his statement "with 'actual malice'—that is, with knowledge that it was false or with reckless disregard of whether it was false or not"—before plaintiff may obtain presumed damages (or, for that matter, punitive damages, which plaintiff here also seeks, *see infra*). *New York Times Co. v. Sullivan*, 376 U.S. 254, 280 (1964); *see Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*, 472 U.S. 749, 755–61 (1985) (plurality opinion) (laying out the relevant doctrine). The parties contest whether plaintiff is a public figure, *see* Def.'s 12(b) Mem. at 34–36; Pl.'s Opp'n at 7–12, and whether defendant made his statement with actual malice, *see* Def.'s 12(b) Mem. at 37–39, 40 n.15; Pl.'s Opp'n at 19–23. They also dispute whether defendant's speech concerned a "public controversy" (an element of public figure analysis), *see* Def.'s 12(b) Mem. at 35–36; Pl.'s Opp'n at 9–10, though less clear is whether they disagree over defendant's speech involving a matter of "public concern," *see* Patrick J. McNulty, *The Law of Defamation*, 44 DRAKE L. REV. 639, 699 n.605 (1996) (arguing that "[t]he public concern standard must be distinguished from the public controversy designation" because "[i]f the public concern standard is to have any independent significance, it must be interpreted more broadly than the *Gertz* public controversy element").
    The D.C. Circuit has indicated, on at least two occasions, that, at the motion to dismiss stage, a court "must . . . assume [based on the allegations in the complaint] that . . . statements were made by appellees with knowledge of their falsity or reckless disregard for their truth." *Weyrich v. New Republic, Inc.*, 235 F.3d 617, 623 (D.C. Cir. 2001); *see also Farah v. Esquire Magazine*, 736 F.3d 528, 534 (D.C. Cir. 2013) (same). Yet, whether this aspect of *Weyrich* and *Farah* remain good law after the Supreme Court's landmark decisions in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), is an open question. *See Libre By Nexus*, 311 F. Supp. 3d at 155 n.2 (noting that "while *Farah* was decided after the Supreme Court's decisions in *Twombly* and *Iqbal*, the D.C. Circuit did not explain how, if at all, those cases affect the rule recited in *Weyrich*"). Accordingly, "despite the 'seemingly broad pronouncement' in [*Weyrich* and] *Farah*, courts in this District still grant motions to dismiss where the facts alleged do not make out a plausible defamation claim." *Id.*; *see also, e.g.*, *Deripaska*, 282 F. Supp. 3d at 143 (same). For purposes of the present motion, the Court assumes, *arguendo*, that the First Amendment permits plaintiff to recover presumed and punitive damages in these circumstances. The Court likewise assumes that plaintiff has adequately pleaded defamation *per se*, an issue over which the parties also disagree. *See* Def.'s 12(b) Mem. at 32–33, 40; Pl.'s Opp'n at 12–13.

15

concrete loss." *Republic Tobacco Co.*, 381 F.3d at 734 (ordering eight-fold reduction of presumed damages when initial award was excessive considering the offered evidence of harm); *see also Prendeville v. Singer*, 155 Fed. App'x 303, 305 (9th Cir. 2005) (explaining that although, "[i]n a case involving defamation *per se*, damages are presumed and no proof of actual harm to reputation is required for the recovery of damages," "[a] court, nonetheless, retains discretion to grant a new trial for excessive damages where the amount of presumed damages awarded is wholly unsupported by the evidence presented"); *Airlie Found., Inc.*, 337 F. Supp. at 431 (reducing presumed damages award when reputational harm was minimal). Whereas plaintiff treats presumed damages as amounting to a blank check, in fact "a nominal recovery" can be "sufficient to vindicate . . . injury to reputation." *Grossman v. Goemans*, 631 F. Supp. 972, 974 (D.D.C. 1986) (internal quotation marks omitted) (quoting *Airlie Found., Inc.*, 337 F. Supp. at 431).

Here, plaintiff, as detailed in Part III.B, *supra*, has failed to explain in any concrete terms how defendant's statements harmed him. In turn, he also has failed to support his purported presumed damages in excess of $75,000, given that his presumed damages must at least roughly approximate his actual harms. *See, e.g.*, *Freeman Holdings of Ariz., L.L.C. v. Does, 1-50*, No. CV-11-01877-PHX-NVW, 2013 WL 210810, at *4 (D. Ariz. Jan 18, 2013) ("Plaintiff does not have and never has had any evidence of actual damages, which presumed damages are meant to approximate . . . . To a legal certainty, this cannot reach the amount-in-controversy requirement of 28 U.S.C. § 1332(a)."). Indeed, plaintiffs presenting similar—and even more compelling— cases have been awarded presumed damages well below the jurisdictional threshold. *See, e.g.*, *LaRue v. Johnson*, No. 16-cv-000504 (EGS/RMM), 2018 WL 1967128, at *9 (D.D.C. Feb. 22, 2018) (magistrate judge's report and recommendation) (awarding $40,000 in presumed damages

when the defendant "falsely accused [the plaintiff] of unsavory and criminal conduct, and disseminated those defamatory statements widely enough to isolate [the plaintiff] from family, friends, and business contacts"), *report and recommendation adopted*, No. 16-cv-504 (EGS), 2018 WL 2561036 (D.D.C. Apr. 4, 2018); *Prendeville*, 155 Fed. App'x at 305 (holding that district court reasonably determined that presumed damages of $50,000 "was the maximum amount sustainable" when the plaintiff "offered scant testimony on harm to his professional reputation" and "[t]here was no evidence presented of humiliation or emotional harm"); *Grossman*, 631 F. Supp. at 974 (awarding $2,500 in presumed damages "to vindicate the injury to plaintiffs' reputation" when the defendant's defamatory charges "were serious" and the plaintiffs, "[a]s attorneys," had "a clear interest in maintaining untarnished reputations").[11] In short, plaintiff has not satisfied the amount-in-controversy requirement by claiming presumed damages.

Third and finally, plaintiff argues that the determination of the amount in controversy must take into account the availability of punitive damages. *See* Pl.'s Opp'n at 27–28; *see also Ayala v. Washington*, 679 A.2d 1057, 1069–70 (D.C. 1996) (determining that punitive damages

---

[11] In *LaRue*, the amount-in-controversy requirement presented no obstacle to the exercise of federal jurisdiction because presumed damages constituted only a small part of the total damages. *See* 2018 WL 1967128, at *10 (determining that the plaintiff was entitled to $180,000 in special damages because plaintiff had, *inter alia*, provided income tax returns showing drops in the plaintiff's gross receipts). In *Grossman* the amount-in-controversy threshold was less than it is now, such that the low presumed damages award proved sufficient when combined with a higher—albeit still low—punitive damages award. *See* 631 F. Supp. at 974–75; *cf. Rosenboro*, 994 F.2d at 18 (noting that by raising the amount-in-controversy requirement, Congress has increased the burden that plaintiffs bear). The basis of jurisdiction in *Prendeville* is not apparent, but, in any event, a damages award below the jurisdictional threshold does not undermine a court's initial jurisdictional determination, because "[t]he existence of federal jurisdiction ordinarily depends on the facts as they exist when the complaint is filed." *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 830 (1989); *see also Bronner*, 962 F.3d at 603 ("The amount in controversy for federal diversity jurisdiction purposes is determined as of the time the action is commenced." (alteration omitted) (quoting *Worthams v. Atlanta Life Ins. Co.*, 533 F.2d 994, 997 (6th Cir. 1976))). "It makes sense to focus on the claims set out in the complaint, instead of the plaintiff's actual recovery; '[o]therwise, every diversity case that a plaintiff lost on the merits would be dismissed for lack of federal jurisdiction, allowing the plaintiff to start over in state court.'" *Bronner*, 962 F.3d at 603 (alteration in original) (quoting *Herremans v. Carrera Designs, Inc.*, 157 F.3d 1118, 1121 (7th Cir. 1998)).

17

are available in defamation actions if a plaintiff proves at least nominal actual damages); *see also Vassiliades v. Garfinckel's*, 492 A.2d 580, 593 (D.C. 1985) (Rogers, J.) (indicating that punitive damages can be available in invasion of privacy cases); *Oliver v. Mustafa*, 929 A.2d 873, 878 (D.C. 2007) (explaining that "'[p]unitive damages are available in actions for intentional torts,'" including "intentional infliction of emotional distress" (alteration in original) (quoting *Robinson v. Sarisky*, 535 A.2d 901, 906 (D.C. 1988))). Plaintiff is correct that punitive damages can "count toward the amount in controversy." *Lopez v. Council on Am.-Islamic Relations Action Network, Inc.*, 741 F. Supp. 2d 222, 233 (D.D.C. 2010). Yet, "[i]n applying the legal certainty test where the availability of punitive damages is the sine qua non of federal jurisdiction the District Court should scrutinize the punitive damage claim to ensure that it has at least a colorable basis in law and fact." *Kahal v. J.W. Wilson & Assocs., Inc.*, 673 F.2d 547, 549 (D.C. Cir. 1982). "Liberal pleading rules are not a license for plaintiffs to shoehorn essentially local actions into federal court through extravagant or invalid punitive damage claims." *Id.*

Plaintiff's attempt to rely on punitive damages to meet the requisite jurisdictional threshold does not withstand this scrutiny and fails for much the same reason as his other arguments. Awards of punitive damages are not unlimited. To the contrary, the Supreme Court has sharply restricted the size of punitive damages awards, stating that "few awards exceeding a single-digit ratio between punitive and compensatory damages, to a significant degree, will satisfy due process," *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 501 (2008) (internal quotation marks omitted) (quoting *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 425 (2003)), and further indicating that "an award of more than four times the amount of compensatory damages might be close to the line of constitutional impropriety," *State Farm*, 538 U.S. at 425. Here, plaintiff has shown only a *de minimis* amount of compensatory and presumed damages

potentially at issue, and four—or, for that matter, ten—times a *de minimis* amount is still less than $75,000.  *See, e.g.*, *Freeman Holdings*, 2013 WL 210810, at *4 (dismissing a claim of defamation *per se* when the plaintiff failed to provide evidence of his losses because "punitive damages must be proportional" to actual damages).  Thus, even adding potential punitive damages to the calculus, plaintiff still falls short of satisfying the amount-in-controversy requirement.

## IV.   CONCLUSION

For the foregoing reasons, defendant's 12(b) motion is granted to the extent it seeks relief under Federal Rule of Civil Procedure 12(b)(1), and defendant's anti-SLAPP motion is denied as moot.  Accordingly, this action is dismissed for lack of subject matter jurisdiction.

An Order consistent with this Memorandum Opinion will be filed contemporaneously.

Date: July 31, 2020

_____
BERYL A. HOWELL
Chief Judge